1   John B. Thomas (Bar No. 269538)
    jthomas@hicks-thomas.com
2   Eric Grant (Bar No. 151064)
    grant@hicks-thomas.com
3   8001 Folsom Boulevard, Suite 100
    Sacramento, California 95826
4   Telephone:  (916) 388-0833
    Facsimile:   (916) 691-3261
5
6   J. Allen Carney (*pro hac vice* application forthcoming)
    acarney@carneywilliams.com
    Hank Bates (Bar No. 167688, application forthcoming)
7   hbates@carneywilliams.com
    Carney Williams Bates Pulliam & Bowman, PLLC
8   11311 Arcade Drive
    Little Rock, Arkansas 72212
9   Telephone:  (501) 312-8500
    Facsimile:   (501) 312-8505
10
    Counsel for Plaintiffs MARGIE DANIEL,
11  ROBERT McCABE, MARY HAUSER,
    DONNA GLASS, and ANDREA DUARTE
12
13                  UNITED STATES DISTRICT COURT
14                EASTERN DISTRICT OF CALIFORNIA
15                      SACRAMENTO DIVISION
16
17  MARGIE DANIEL, ROBERT McCABE,    )  No.
    MARY HAUSER, DONNA GLASS, and    )
18  ANDREA DUARTE, individually and on )
    behalf of a class of similarly situated )  **COMPLAINT**
19  individuals,                      )
                                      )  **JURY TRIAL DEMANDED**
20              Plaintiffs,            )
                                      )
21         v.                         )
                                      )
22  FORD MOTOR COMPANY, a Delaware    )
    corporation,                      )
23                                    )
                Defendant.            )
24  _____  )
25
26
27
28

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

{00143819.DOC}

Plaintiffs Margie Daniel, Robert McCabe, Mary Hauser, Donna Glass, and Andrea Duarte ("Plaintiffs") bring this action individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased defective Ford Focus vehicles manufactured by Defendant Ford Motor Company ("Defendant" or "Ford"), and allege as follows:

**JURISDICTION**

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which at least five members of the proposed Plaintiff Class (named Plaintiffs Margie Daniel, Robert McCabe, Mary Hauser, Donna Glass, and Andrea Duarte) are citizens of California while Defendant is a citizen of Delaware and Michigan.

2.     Alternatively, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of California (all named Plaintiffs) and a citizen of Delaware and Michigan (Defendant).

**VENUE**

3.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(a)(1), because Defendant is a corporation that resides in this judicial district pursuant to 28 U.S.C. § 1391(c).

4.     Alternatively, venue lies in this Court pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

5.     For purposes of Local Rule 120(d), this action arises in San Joaquin County and in Tehama County and is therefore properly commenced in Sacramento.

**PARTIES**

6.     Plaintiff Margie Daniel is a citizen of California and a resident of Ione, San Joaquin County, California.

7.     Plaintiff Robert McCabe is a citizen of California and a resident of Corning, Tehama County, California.

///

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

8.     Plaintiff Mary Hauser is a citizen of California and a resident of Mokelumne Hill, California.

9.     Plaintiff Donna Glass is a citizen of California and a resident of Ukiah, California.

10.    Plaintiff Andrea Duarte is a citizen of California and a resident of Santa Cruz, California.

11.    Defendant Ford Motor Company ("Defendant" or "Ford") is a Delaware corporation with its principal place of business in Dearborn, Michigan.  Pursuant to 28 U.S.C. § 1391(c), Ford resides in this judicial district because it is subject to personal jurisdiction here.

**GENERAL ALLEGATIONS**

12.    Ford designed, manufactured, distributed, marketed, sold, and leased model year 2005 through 2011 Ford Focus vehicles ("Defective Vehicles") to Plaintiffs and other Class Members.

13.    Ford desires that retail consumers like Plaintiffs and other Class Members purchase or lease vehicles manufactured or distributed by Ford, and Ford profits when such consumers do purchase or lease such vehicles.

14.    But Ford does not sell or lease its vehicles to directly to retail consumers.  Instead, Ford sells and lease vehicles to its "authorized" dealerships, with the intention that they resell or re-lease the vehicles to retail consumers like Plaintiffs and other Class Members, to Ford's profit.

15.    Ford's "authorized" dealerships are therefore Ford's agents with respect to the sales and leases of the Defective Vehicles described herein.

16.    Beginning in 2005, if not before, Ford knew or should have known that the Defective Vehicles contain one or more design and/or manufacturing defects that affect the vehicle's alignment and cause the tires of the Defective Vehicles to wear out unevenly and prematurely and/or causes the Defective Vehicles to drift while driving on wet or snow-covered roads.  Although this defect manifests itself during the warranty period, Ford has failed to repair and/or replace the defective components or the damaged tires under warranty.[1]

---

[1] Ford provides a new vehicle 3-year/36,000-mile bumper-to-bumper warranty.

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

17.     The defect at issue affects the alignment/geometry of the Defective Vehicles' wheels.  As a result of the defect (the "Suspension Defect"), the Defective Vehicles are or become misaligned, and as a result, the tires wear prematurely, causing the occupants to experience an extremely rough ride, as well as exceptionally loud noise, while driving the Defective Vehicles.  The Suspension Defect also results in drivers losing control of the Defective Vehicles while driving on wet or snow-covered roads.

18.     The Defective Vehicles present a safety hazard and are unreasonably dangerous to consumers.  Tires are one of the most important mechanical components for a vehicle's control and safe driving.  This is because a driver has only three ways to control a car:  braking, accelerating, or steering.  Each of these is dependent upon rolling friction with the ground beneath the wheels, and the only contact the vehicle has is through its tires.[2]

19.     The Defective Vehicles present a safety hazard and are unreasonably dangerous to consumers because uneven and premature tire wear can have serious consequences on handling, steering, stability, and braking of the Defective Vehicles while in operation.  For example, as a result of the Suspension Defect, the Defective Vehicles' tread wear becomes uneven and can cause catastrophic tire failure.  This is because the contact patch of the tire is being dragged at an angle to the road that is different than the vehicle's intended path.  These altered angles caused by the Suspension Defect put the load and friction on the inside edge of the tires, which can cause uneven tire wear and other problems.  When this occurs, the Suspension Defect can suddenly and unexpectedly cause tire failure while the vehicle is in operation, thereby contributing to car accidents, which can cause personal injury or death.[3]

---

[2] *See e.g.*, http://www.oregon.gov/OSP/PATROL/safety_tip_tire_safety.shtml.

[3] The Defective Vehicles are also unsafe because the Suspension Defect results in Defective Vehicles equipped with tires that do not comply with the Federal Motor Vehicle Safety Standards ("FMVSS").  FMVSS 571.109 establishes the tire dimensions and laboratory test requirements for passenger vehicle tires.  Section S4.2.1(d) requires tires to incorporate a tread wear indicator that will provide a visual indication that the tire has worn to a tread depth of 1/16 inch.  Because the tires equipped on Defective Vehicles experience uneven wear along the width of the tire, a tire wear indicator will not accurately reflect the depth of the remaining tire tread along the entire width of the tire.

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

20.    The Defective Vehicles further present a safety hazard and are unreasonably dangerous to consumers because the Suspension Defect can cause the Defective Vehicles to drift while driving on wet or snow-covered roads.  While the vehicle is drifting, the driver has little or no control over the vehicle, thereby increasing the likelihood of car accidents, which can cause personal injury or death.

21.    In addition to these safety hazards, the cost to repair the Suspension Defect and the damage that it causes (*i.e.*, the cost of replacement tires) can be exorbitant because consumers will be required to pay hundreds, if not thousands, of dollars both to repair the Suspension Defect and to prematurely replace the damaged tires.  Indeed, as a result of the Suspension Defect, the tires must frequently be replaced prematurely, in many cases after less than 20,000 miles.  In properly functioning vehicles without the Suspension Defect, the expected tread wear of the original factory tires installed in the vehicles is estimated at 75,000 miles or more in U.S. Department of Transportation (DOT) National Highway Traffic Safety Administration's (NHTSA) Uniform Tire Quality Grade Standards (UTQG) wear tests.  Additionally, Ford conceded there was a problem with the Defective Vehicles when Ford changed the stock tire in 2008, but the problem persisted.  Finally, it should be noted that the tires on the Focus perform much better on other cars.

22.    Plaintiffs are informed and believe and on such basis allege that Ford knew or should have known that the Defective Vehicles are defective and not fit for their intended purpose of providing consumers with safe and reliable transportation.  Nevertheless, Ford has actively concealed this defect from, and failed to disclose this defect to, Plaintiffs and other Class Members at the time of purchase or lease and thereafter.

23.    Plaintiffs are also informed and believe and on such basis allege that as the number of consumer complaints about the Suspension Defect increased, in July 2010, Ford issued a technical service bulletin ("TSB") to only their dealers[4] acknowledging and admitting to

///

---

[4] The TSB was not disseminated to all owners and lessees of the Defective Vehicles.

Hicks Thomas LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

the existence of the Suspension Defect.[5]  In the TSB, Ford instructed its dealers to address the Suspension Defect as follows:

> TO SERVICE, REFER TO THE SYMPTOM CHART IN WORKSHOP MANUAL, SECTION 204-04 AND CORRECT ANY IDENTIFIED ISSUES. IF PERFORMING AN ALIGMENT, RECORD ALL ALIGNMENT ANGLES PRIOR TO ANY ADJUSTMENTS, AND ENTER IN WARRANTY CLAIM IF APPLICABLE.  TO MINIMIZE TIRE WEAR CONDITIONS, POSITION ALL ALIGNMENT SETTINGS AS CLOSE TO THE MIDDLE OF THE SPECIFIED RANGE AS POSSIBLE.  PAY PARTICULAR ATTENTION TO FRONT AND REAR TOE SETTINGS.

(These instructions are referred to herein as the "Alignment Modification.")

24.     Ford knew that the new recommended practices of the Alignment Modification were not possible on Defective Vehicles.  The Alignment Modification negates the original tolerance for rear toe and camber as specified in Workshop Manual specification. The rear camber specification is -1.00º for the Defective Vehicles.  The original tolerance specification for the camber angle is ±1.00.  By rewriting the specification and service procedure, Ford is admitting a problem with the original vehicle.  The Workshop Manual's recommended method for adjusting the rear camber angle is using upper arm with an upper arm repair kit (3S4Z-1A154-AA).  This kit consists of a longer arm and bolts that changes the camber by +1.00º.  But this kit does not permit the tuning of a "middle of the specification" adjustment of the rear camber on all Defective Vehicles.  The addition of these extra parts and labor creates an extra financial burden for Plaintiffs.

25.     Plaintiffs are informed and believe and on such basis allege that the "middle of the specification" angles will be maintained at least 5,000 miles between recommended service intervals.  Ford knows these angles cannot be maintained due to the kinematics of the rear suspension and elastokinematics of the bushings of the rear suspension links.

26.     Plaintiffs are informed and believe and on such basis allege that Ford's Alignment Modification is only a temporary fix and will not fix the underlying problem.  It only marginally

---

[5] The TSB acknowledges that, "SOME 2005-2011 FOCUS VEHICLES MAY EXHIBIT PREMATURE FRONT/REAR TIRE WEAR AND/OR A VEHICLE DRIFT CONDITION WHEN DRIVING ON WET OR SNOW PACKED ROADS."

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

increases the amount of time before consumers again experience the Suspension Defect, the need for costly repairs, as well as the associated safety hazards.

27.     Plaintiffs are also informed and believe and on such basis allege that Ford is aware that the Alignment Modification does not fix the defect.  Rather, Ford implemented this temporary fix to prolong the amount of time that will elapse before the Suspension Defect manifests itself, thus helping ensure that the Suspension Defect occurs outside of the warranty period so that Ford can easily and unfairly shift financial responsibility for the Suspension Defect to Class Members.

28.     Plaintiffs are informed and believe and on such basis allege that the 2010 TSB is strictly limited to the most persistent customers and only those who visit Ford's dealers and complain loudly enough about the Suspension Defect and the premature tire wear and/or vehicle drift that it causes.  In other words, while Ford's dealers check consumers' tires during regular maintenance and inform them about the need to pay hundreds of dollars to replace their unevenly worn tires, they fail to advise consumers about the cause of the premature tire wear and Ford's clandestine TSB that, according to Ford, can allegedly fix the problem.

29.     In fact, instead of providing consumers with notice of the Alignment Modification, Ford and its dealers, who are its agents for vehicle repairs, have routinely, wrongfully, and unfairly attributed consumers' premature tire wear to the consumers' driving habits, road conditions, and improper maintenance, despite the fact that Ford has known or should have known since 2005 that the premature tire wear is due to the Suspension Defect alleged herein, and despite the fact that since July 2010, Ford has had a solution that, according to Ford, can fix the problem.

30.     Plaintiffs are informed and believe and on such basis allege that despite the notice of the Suspension Defect from numerous consumer complaints and dealership repair orders, Ford has not recalled the Defective Vehicles to repair the defect, has not offered its customers a suitable repair or replacement free of charge, and has not offered to reimburse the Defective Vehicles' owners and leaseholders the costs they incurred related to diagnosing and repairing the Suspension Defect and the related damage that it causes.

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

31.     Ford knew and concealed the Suspension Defect contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiffs and Class Members both at the time of sale or lease and repair and thereafter.  Had Plaintiffs and Class Members known about these defects at the time of sale or lease, Plaintiffs and Class Members would not have purchased the Defective Vehicles or would have paid less for them.  As a result of their reliance on Ford's omissions and/or misrepresentations, owners and/or lessees of the Defective Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Defective Vehicles.

32.     Additionally, as a result of the Suspension Defect contained in the Defective Vehicles, Plaintiffs and the Class Members have been harmed and have suffered actual damages in that the Defective Vehicles and their tires are experiencing premature and uneven tire wear and/or are substantially certain to experience premature and uneven tire wear before their expected useful life has run.  Plaintiffs and the Class Members have been further harmed and suffered actual damages because the Defective Vehicles have drifted and/or are substantially likely to drift on wet or snow-covered roads resulting in physical damage to their vehicles.

33.     For years, Ford has designed, manufactured, distributed, sold, and leased the Defective Vehicles.  Upon information and belief, it has sold, directly or indirectly through dealers and other retail outlets, hundreds of thousands of Defective Vehicles in California and nationwide.

34.     The Defective Vehicles are defective, including but not limited to defects related to the vehicles' wheel alignment, suspension, and/or steering.  As a result of this defect, the Defective Vehicles are, or become (among other things), misaligned and, as a result, the tires wear unevenly and prematurely, causing the occupants to experience an extremely rough ride, as well as exceptionally loud noise, while driving the Defective Vehicles.  The Suspension Defect also results in drivers losing control of the Defective Vehicles while driving on wet or snow-covered roads.

35.     Plaintiffs are informed and believe and on such basis allege that Ford acquired its knowledge of the Suspension Defect through sources not available to Class Members, including

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

but not limited to pre-release testing data, early consumer complaints about the Suspension Defect to Ford and its dealers (who are Ford's agents for vehicle repairs), testing conducted in response to those complaints, aggregate data from Ford's dealers, and from other internal sources.

36.     Ford had and has a duty to disclose the Suspension Defect and the associated repair costs to Class Vehicle owners and lessees because, among other reasons, the defect poses an unreasonable safety hazard, Ford had and has exclusive knowledge or access to material facts about the Defective Vehicles that was not and is not known or reasonably discoverable by Plaintiffs and Class Members, and Ford has actively concealed the Suspension Defect from its customers.

37.     Hundreds, if not thousands, or purchasers and lessees of the Defective Vehicles have experienced the Suspension Defect.  Complaints filed by consumers with the National Highway Traffic Safety Administration (NHTSA) and posted on the Internet demonstrate that the defect is widespread and dangerous.  The complaints also indicate Ford's awareness of the defect and how potentially dangerous the defective condition is (note that spelling and grammar mistakes remain as found in the originals):

- <u>NHTSA COMPLAINT</u>:  TL *THE CONTACT OWNS A 2005 FORD FOCUS. THE MANUFACTURER OF THE TIRES WAS B.F. GOODRICH AND THE TIRE SIZE WAS P205/50/16.  THE CONTACT STATED THAT THE TIRES HAVE EXCESSIVE TREAD WEAR.  AS A RESULT OF THE TIRE BLOW-OUT, THE TIRE FAILURE INCREASED THE RISK OF VEHICLE CRASH. SHE HAD TO REPLACE THE TIRES ON TWO OCCASIONS.   THE MANUFACTURER WILL ONLY ASSUME PARTIAL RESPONSIBILITY. SHE HAS PICTURES OF THE FAILED COMPONENT.  THE FAILURE MILEAGES WERE 20,000.

- <u>NHTSA COMPLAINT</u>:  2005 FORD FOCUS.  MY FAMILY AND I WERE COMING UP FROM FLORIDA WHEN IT STARTED TO RAIN.  I FELT THE CAR SLIPPING ON THE ROAD SO I MOVED OVER INTO THE FAR RIGHT HAND LANE.  THE CAR SLIPPED AGAIN AND I HYDROPLANED AND CRASHED CAR ON NOV. 29TH DUE TO TIRES THAT WERE ONLY 6MONTHS OLD.  I FELT THESE NEW TIRES HAD BEEN WORN SMOOTH AFTER ONLY 10,000 MILES OF USAGE WITH A CAR THAT HAD NO BRAKE OR ALIGNMENT ISSUES.  THE TIRES WERE FULL OF AIR AT THE RIGHT PRESSURE AND I NOTICED NOT TREAD ISSUES BEFORE LEAVING OUT OF TOWN.  WHEN FILLING OUT THE POLICE REPORT, THE OFFICER WROTE ME A TICKET CLAIMING THE ACCIDENT HAPPENED BECAUSE OF THE TIRES.  WE HAD TO STAY OVERNIGHT

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

1 IN A HOTEL AND PURCHASED NEW TIRES THE NEXT DAY.  I STILL
RETAIN THE TIRES.  *TR

2

3 • NHTSA COMPLAINT:  TL* THE CONTACT OWNS A 2005 FORD FOCUS.
THE CONTACT NOTICED THAT THE WEAR BAR WAS EXPOSED ON
EACH TIRE.  THE MILEAGE WAS 44,244 WHEN THE NEW TIRES WERE

4 PURCHASED.  THE TIRE MANUFACTURER AND BRAND WERE TOYO
TIRES, THE DOT#CX3V862205 , AND THE SIZE WS 205/15VR16.  THE

5 TIRES WERE 40,000 MILE TIRES, WHICH CAUSED TIRE FAILURE AT
19,415 MILES EARLIER.  THE TIRE DEALER WAS NOTIFIED.  THE

6 CURRENT AND RECENT FAILURE MILEAGE WERE 63,659.  *AK THE
CONSUMER STATES THAT EVERY 5,000 MILES THE WERE ROTATED

7 TWICE BY FORD MOTOR CO AND TWICE BY HER HUSBAND.  THE
CONSUMER ALSO STATES SHE HAS 90,000 MILES WARRANTY.  THE

8 CONSUMER STATES SHE WANTS TO BE REIMBURSED FOR A PORTION
OF THE COST OF THE NEW TIRES.  UPDATED 05/13/07 *TR

9

10 • NHTSA COMPLAINT:  WE PURCHASED OUR 2005 FORD FOCUS ZX4
SES BRAND NEW IN FEBRUARY 2005.  SINCE THE DATE OF PURCHASE

11 WE HAVE HAD TO REPLACE THE REAR TIRES 5 TIMES, TWO OF THE 5
TIMES WE REPLACED THE WHOLE SET.  THE ORIGINAL FACTORY

12 TIRES ON THE REAR OF VEHICLES (YOKOHAMA 205/50/ZR16) WERE
BALD AT 11,000 MILES.  AT THAT TIME WE REPLACED THEM WITH 4

13 NEW YOKOHAMA TIRES.  SIX MONTHS LATER, WE HAD TO BY
ANOTHER COMPLETE SET OF TIRES (MICHELIN/205/55/R16) BECAUSE

14 THE TIRES IN THE REAR WERE CUPPING AND WEARING IN A
DIAGONAL PATTERN.  WE TOOK THE VEHICLES TO FORD BOTH

15 TIMES AND THEY DENIED THAT THERE WAS ANY FACTORY
DEFECTS ON THE VEHICLE.  FORD CLAIMED IT MUST BE AN

16 ALIGNMENT ISSUE, WE PAID $79.99 FOR A 4 WHEEL ALIGNMENT,
AND EVEN HAD THE FRONT END CHECKED, AS WELL AS SHOCKS AN

17 STRUTS, AND FORD CLAIMED THERE WAS NOTHING WRONG.  SINCE
THEN, WE HAVE HAD TO REPLACE THE TIRES 3 MORE TIMES, JUST

18 LAST WEEK BUYING TWO NEW TIRES FOR THE REAR.  WE REPLACED
TIRES ON 7/13/2006 (16,463 MILES), THEN ON 7/6/2007 (25,926 MILES),

19 THEN ON 1/16/2009 (43,556 MILES).  ALL OF THE TIRES PURCHASED
HAD 80,000-85,000 MILES WARRANTIES ON THEM.  FORD REFUSES TO

20 ACKNOWLEDGE THAT THERE IS A PROBLEM WITH THESE VEHICLES,
AND CLEARLY OUR VEHICLE IS NOT THE ONLY ONE TO EXPERIENCE

21 THIS PROBLEM.  REFERENCE OIB-NHTSA, TSB#19064.  FORD SHOULD
BE FORCED TO FIX THE DEFECTS WITH THESE VEHICLES, AT NO

22 COST TO THE CONSUMERS WHO PURCHASED THEM IN GOOD FAITH.
WE SHOULDN'T HAVE TO INVEST $3,000 IN COSTS FOR TIRES IN 3.25

23 YEARS.  *TR

24 • NHTSA COMPLAINT:  MY 2005 FORD FOCUS WHICH I BOUGHT NEW
OFF THE DEALERSHIP NOW HAS 100000 MILES ON IT.  WITHIN THE

25 PAST YEAR, WHILE DRIVING, THE BACK END FISHTAILS BACK AND
FORTH AS IF IT IS BEING HIT BY STRONG WIND.  AS SOON AS I TOLD

26 A REPAIR SHOP THIS THEY IMMEDIATELY RECOGNIZED THE
PROBLEMS BECAUSE THEY HAVE HAD MANY OTHER FOCUS

27 OWNERS COMPLAINING ABOUT THE SAME THING.  THE REAR
CONTROL ARM ASSEMBLY IS DEFECTIVE.  THIS IS NOT SOMETHING

28 THAT SHOULD NEED TO BE EVER CHANGED ON A VEHICLE.  THE
REPAIR SHOP SAID THAT WHEN THEY ORDER A NEW ONE FROM

{00143819.DOC}                                    9

FORD, THE NEW ONE SENT IS MUCH STRONGER AND BULKIER WHICH TELLS THEM THAT FORD IS AWARD OF THIS DEFECT.  THE REPAIR BILL FOR THIS IS OVER $1200! THIS IS VERY DANGEROUS AS YOU FEEL YOU ARE LOOSING CONTROL OF THE VEHICLES AT ANY TIME.  UPON HEARING THIS, I CONTACTED MY PARENTS WHO ALSO HAVE A FORD FOCUS AND THEY SAID THAT THOUGH THEY HAVE ONLY HALF THE NUMBER OF MILES ON THEIR VEHICLES IT IS ALSO A 2005 MODEL AND IT HAS STARTED TO DO THIS ALSO TO THEM BUT THEY DIDN'T KNOW WHAT TO THINK, IF IT WAS JUST BAD ROADS OR WHAT.  VERY DANGEROUS AND FORD HAS NO RESPONSE TO MY QUESTIONS! *TR

- NHTSA COMPLAINT:   REAR END IS CONTINUOUSLY OUT OF ALIGNMENT CAUSING SCALLOPING TO THE REARS OF TWO SETS OF TIRES.  FORD DEALERSHIP AND FORD HEADQUARTERS REFUSE TO TAKE ANY ACTION, EXPLAINING IT IS MY "TOUGH LUCK" AND THAT I NEED TO PURCHASE NEW TIRES AND CONTINUE TO PAY ONCE TO TWICE A YEAR FOR ALIGNMENT IF TIRES HAVE NOT ALREADY BEEN DESTROYED.  MANY OTHER MECHANICS I TALK TO SAY THE FOCUS IS NOTORIOUS FOR REAR END ALIGNMENT, BUT FORD WILL NOT MAKE ANY EFFORT TO RECTIFY THE SITUATION OR TAKE CONCILIATORY ACTION.  *NM

- NHTSA COMPLAINT:  EVERY TIME WE WOULD ATTEMPT TO DRIVE OUR 2005 FORD FOCUS ZX3 ON SLIPPERY ROADS THE REAR END WOULD WIGGLE FROM SIDE TO SIDE, AT 20 MPH OR FASTER, IF FELT AS IF YOU WERE GOING TO LOOSE CONTROL AT ANY TIME, IT WAS REAL BAD WHEN YOU WENT FROM CLEAR ROADS TO SLIPPERY, IT FELT LIKE IT WAS GOING TO GO SIDEWAYS !  FORD GAVE OUR DEALER SEVERAL THING TO TRY, BUT THEY WERE NEVER ABLE TO STOP THE CAR FORM WIGGLING ALL OVER, THIS CAR WAS NOT SAFE TO DRIVE, DEALER HAD THE CAR AT THERE LOT FOR APPROX 28 DAYS, MAINLY BECAUSE I WOULD NOT LET MY WIFE DRIVE THIS CAR WHEN ROADS WERE SLIPPERY, WE FEARED FOR HER SAFETY ! FORD DECIDED THEY COULD DO NO MORE UNTIL FORD SERVICE ENGINEER HAD A CHANCE TO DRIVE IT ON SLIPPERY ROADS, HE WAS NEVER ABLE TO GET HERE WHEN ROADS WERE BAD, HE DID A WEEK OR SO AGO DRIVE A XZ3 AT A DIFFERENT DEALERSHIP WHEN THE ROADS WERE ICY, HE CALLED THE SERVICE MANGER AT OUR DEALERSHIP TO TELL HIM THAT THE FOCUS HE DROVE WAS ALL OVER THE ROAD, AND THAT IT ALMOST WENT SIDEWAYS WHEN HE WENT FROM SLIPPERY TO DRY ! SO THEY DECIDED THAT ALL FOCUS ZX3 MUST DO THAT , AND THAT THERE WAS NO FIX ! ONLY PART THAT I KNOW THAT WERE CHANGED WERE THE TIE-BLADES ? FORD WOULD NOT HELP US GET OUT OF IF THIS CAR, BUT OUR DEALER WORKED VERY HARD WITH US, AND GOT MY WIFE IN TO A 2006 ESCAPE YESTERDAY ! A BIG THANK YOU GOES OUT TO SIMMONS FORD IN VICKSBURG, MICHIGAN ! *NM

- NHTSA COMPLAINT:  I PURCHASED MY USED VEHICLE IN 06/08 AND IMMEDIATELY THERE WERE ISSUES WITH THE TIRES.  I TOOK IT BACK TO THE DEALERSHIP AND THEY AGREED TO REPLACE "ONE BAD TIRE".  IN ORDER TO KEEP ALL THE TIRES IN GOOD AND EQUAL CONDITION I PURCHASED THREE MORE.   OVER THE PAST 10 MONTHS IT HAS BEEN BACK TO THE DEALERSHIP THREE TIMES FOR

Hicks Thomas LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

"ALIGNMENT ISSUES" AND TO A PRIVATE ALIGNMENT SHOP FOR THE SAME ISSUE.  EXTENSIVE RESEARCH ONLINE HAS INDICATED THAT THERE IS A "KNOWN ISSUE" WITH THE FORD FOCUS THAT ALLOWS A "GENEROUS" SPREAD FOR ALIGNMENT SPECS.  AS LONG AS IT CAN BE ALIGNED WITHIN FORD'S SPECS IT IS CONSIDERED ACCEPTABLE, HOWEVER THE TIRES CONTINUE TO WEAR UNEVENLY CAUSING VIBRATION AND INCORRECT TREAD WEAR.  I WAS TOLD BY FORD TODAY THAT THEY DON'T' KNOW WHAT THE "NUMBER IS" BUT THAT THEY ARE ALLOWED TO DO NOTHING UNTIL THAT "MAGIC NUMBER" IS REACHED.  EVIDENTLY THEY HAVE ALSO ISSUED A "SILENT RECALL" THAT ALLOWS ONLY THOSE VEHICLES THAT CANNOT BE ADJUSTED TO THEIR "GENEROUS" SPECS TO BE REPAIRED.  THIS IS NOT ONLY A POTENTIAL SAFETY ISSUE WHEN IT COMES TO TIRE WEAR BUT AFFECTS TRACKING IN SNOW AND WATER WHICH ALSO HEIGHTENS RISK.  *TR

- NHTSA COMPLAINT:  TL *THE CONTACT OWNS A 2005 FORD FOCUS.  WHILE DRIVING APPROXIMATELY 15 MPH ON NORMAL ROAD CONDITIONS, THERE WERE LOUD NOISES OUTSIDE OF THE VEHICLE.  SUDDENLY, THE DIVER SIDE REAR TIRE DISENGAGED FROM THE VEHICLE.   THE DRIVE WAS ABLE TO SAFELY MANEUVER THE VEHICLE TO THE EMERGENCY LANE.  THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC FOR INSPECTION.   THE MECHANIC STATED THAT THE FAILURE RELATED TO THE SUSPENSION, REAR WHEEL BEARING; HOWEVER THE PART WAS UNAVAILABLE AND ON BACK ORDER.   THE VEHICLE HAS NOT BEEN REPAIRED.   THE CONTACT IS AWARE OF THE SAFETY RISK INVOLVED.  THE FAILURE AND CURRENT MILEAGES WERE 56,319.   UPDATED 02/02/09.   *LJ UPDATED 02/03/09.  *JB

- NHTSA COMPLAINT:  WHERE DO I BEGIN? I'VE HAD ALMOST ALL OF THE ISSUES/COMPLAINTS ALREADY FILED HERE FROM THE DOME/AIRBAG LIGHTS GOING OFF FOR NOR REASON, THE KEY GETTING STUCK OR THE CAR STALLING IN NOT STARTING, DISRESPECT/UNPROFESSIONAL FROM FORD REPAIR STAFF OR CALLING FORD CORPORATE, AND THE MOST FAMOUS FOCUS MOMENT OF ALL, WHEN THE CAR SHAKES AT SPEEDS OF 50 OR ABOVE ON HIGHWAYS.   O FORD!, HOW YOU'VE SCREWED US ALL!!!!!!!*TR

- NHTSA COMPLAINT:  VEHICLE WILL NOT STAY ALIGNED.  DURING THE 62,325 MILES I OWNED THE CAR I WENT THROUGH 3 SET OF HIGH QUALITY TIRES AND 7 ALIGNMENTS.  AFTER SOME RESEARCH, IT LOOKS AS THOUGH THIS HAPPENS A LOT, FORD DENIES ANY PROBLEMS WITH THIS BUT TIRE SHOPS AND CAR OWNERS WILL TELL YOU DIFFERENT.  I PUT ABOUT 25K MILES A YEAR ON A CAR, SOMEONE THAT PUTS 10K WOULD NT NOTICE THIS PROBLEM AS OFTEN. *TR

- NHTSA COMPLAINT:  DT*: THE CONTACT STATED WHILE DRIVING 15 MPH AROUND A SHARP CURVE, THE BRAKES FAILED.  ALSO, THERE WAS A LOSS OF STEERING CONTROL WHICH RESULTED IN THE VEHICLE RUNNING ONTO A SIDEWALK.  THE VEHICLE WAS TOWED TO A DEALERSHIP, WHERE IT WAS DETERMINED THE STEERING AND THE BRAKES WERE NOT DEFECTIVE.   THE DEALERSHIP FURTHER

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

DETERMINED THE BALL JOINTS WERE FRACTURED AS A RESULT OF THE ACCIDENT AND NEEDED TO BE REPLACED.  THE CONTACT BELIEVED BALL JOINT FAILURE LED TO THE ACCIDENT.  REPAIRS WERE MADE TO FRONT AND REAR SUSPENSION, AS WELL AS A WHEEL ALIGNMENT.

- NHTSA COMPLAINT:   CAR BOUGHT SEPTEMBER 2004.   CAR REGULARLY DOESN'T START, AND IF IT DOES ALWAYS RUNS AT OVER 3500 RPM FOR UP TO 5 MINUTES WITH NO ACCELERATOR PRESSURE.  ALARM GOES OFF WHEN DRIVING, FOR NO REASON.  CAR SWERVES AND VIBRATES ON ROAD IN DRY AND WET CONDITIONS (SEEMS LIKE STEERING AND / OR SUSPENSION BROKEN / DEFECTIVE).  BRAKES ALSO CREAK.  ALL PROBLEMS FROM CAR PURCHASE TO NOW, MARCH 2005.  TAKEN TO 2 DEALERSHIP ON 4 SEPARATE OCCASIONS, WHO COULD NOT "REPLICATE THE CONCERN".  REPORTED TO FORD MOTOR COMPANY IN JANUARY WHO INFORMAED ME THAT THE ORIGINAL DEALER SERVICE MANGER WOULD CONTACT ME.  SO FAR, 7 WEEKS ON, AND NO CONTACT.  POSSIBLE LEMON LAW CASE.

- NHTSA COMPLAINT:  TL *THE CONTACT OWNS A 2006 FORD FOCUS. WHILE DRIVING 35 MPH OR MORE THE BACK OF THE VEHICLE BEGAN LUNGING TO THE LEFT OR THE RIGHT ON SLIPPERY SURFACES ESPECIALLY WHENEVER IT RAINED OR DURING INCLEMENT WEATHER.  THE VEHICLE WAS TAKEN TO THE DEALER WHO STATED THAT THEY ALIGNED THE REAR END; HOWEVER, THE SAME FAILURE CONTINUED TO OCCUR.  THE MANUFACTURER WAS CALLED AND STATED THAT THE WARRANTY EXPIRED AND THEY WOULD ASSUME THE REPAIR COST.  THE FAILURE MILEAGE WAS 62,000.

- NHTSA COMPLAINT:  THE REAR OF THE CAR JERKS/PULLS AROUND. IT IS VERY HARD TO KEEP CONTROL OF THE VEHICLE WHEN THIS HAPPENS.  THOUGHT IT WAS AN ALIGNMENT PROBLEM.  AFTER HAVING FOUR WHEEL ALIGNMENTS DONE, THE PROBLEMS STILL EXISTED.  SEVERAL MECHANICS TRIED DIAGNOSING THE PROBLEM WITH NO LUCK.  FINALLY ONE MECHANICS WAS ABLE TO PINPOINT THE PROBLEM.  SEEMS THE REAR LOWER ARM ASSEMBLIES ARE FAILING (DEFECTIVE OR WEAK PARTS).   MY WIFE WAS IN AN ACCIDENT A FEW WEEKS AGO WHICH I BELIEVE MAY HAVE BEEN DUE TO NOT BEING ABLE TO CONTROL THE CAR (BACK END BASICALLY DOES WHAT IT WANTS TO DO) THIS IS NOT AN ISOLATED PROBLEM.  I KNOW OF THREE OTHER PEOPLE WITHIN A TEN MILE RADIUS WHO ARE ALSO HAVING THE SAME PROBLEM WITH THEIR FORD FOCUS.  THIS IS DEFINITELY A SAFETY ISSUE WHEN IT TAKE EVERY LITTLE BIT OF EFFORT TO KEEP YOUR CAR IN CONTROL ESPECIALLY ON SNOW COVERED ROADS. *TR

- NHTSA COMPLAINT:   REAR TIRES PREMATURELY WORN AND DAMAGED.  2006 FORD FOCUS WITH 34,000 MILES.  THE PASSENGER SIDE REAR TIRE WORE OUT BADL, (BALD SPOTS, AND IN NEED OF REPLACEMENT.  ALSO THE DRIVER'S REAR TIRE WORE OUT WELL BEYOND THE ACCEPTABLE RANGE FOR THE MILEAGE.  ALSO NEEDS REPLACEMENT.  REAR END IS UNSTABLE AND I TURNED THE CAR AROUND  WHEN  REAR  OF  CAR  LOST  STABILITY.   HAVE  AN

Complaint

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

1   ALIGNMENT SCHEDULED BUT IN 50 YEARS OF DRIVING I HAVE
NEVER HAD A CAR'S REAR WHEELS TO BE OUT OF ALIGNMENT BAD
2   ENOUGH TO MAKE CAR UNSAFE.  *TR

3   • NHTSA COMPLAINT:  I NOTICED THAT THERE WAS EXCESSIVE TIRE
WEAR ON REAR TIRES.  AT 20K MILES THE REAR TIRES ARE ALMOST
4   BALD 2/32 OF TREAD LEFT.  THERE APPEARS TO BE AN ALIGNMENT
ISSUE THAT THE DEALER WOULD NOT COVER UNDER WARRANTY.  I
5   WAS TOLD THAT ALIGNMENT IS ONLY COVERED FOR FIRST 12K
MILES.  THE FRONT WAS ALIGNED UNDER WARRANTY AFTER A BAD
6   TIRE WAS FOUND AT SCHEDULED SERVICE.  IT IS SO BAD NOW THAT
WHEN YOU HIS A BUMP IN THE ROAD THE REAR OF THE CAR JUMPS
7   TO ONE SIDE.  *TR

8   • NHTSA COMPLAINT:  FORD FOCUS STATION WAGON WITH 40,000
MILES ON TIRES.  TIRES WORN COMPLETELY DOWN TO BARE METAL
9   ON BOTH REAR TIRES.  I DROVE INTO A PARKING LOT TO SHOP AND
HEARD HISSING NOISE.  SAW DAMAGED TIRES CHANGED LEAKING
10  TIRE TO SPARE TIRE.  WEAR ON INSIDE OF REAR TIRES ONLY.
LOCAL TIRE DEALER LOOKED AT ALIGNMENT AND COMMENTED
11  THAT   FOCUS   TIRES   FREQUENTLY   BLOW   DUE   TO   "TOW"
IRREGULARITIES IN ALIGNMENT.  DIFFICULT TO ADJUST TOW TO
12  MANUFACTURER'S SPECIFICATIONS WITHOUT EXCESSIVE WEAR ON
REAR TIRES.  I REPLACED TIRES.  I WAS ADVISED TO ROTATE TIRES
13  FREQUENTLY AND HAVE ALIGNMENT CHECKED REGULARLY.  *TR

14  • NHTSA COMPLAINT:  2006 FORD FOCUS REAR TIRES.  NORMAL
DRIVING CONDITIONS WHEN TIRES START TO SHAKE AND THEN
15  WEAR UNEVENLY ON BOTH SIDES.  ONLY 26000 MILES ON TIRES
FROM THE DEALER.  HAVE TO REPLACE.  DEALER SAYS THERE IS
16  NOTHING WRONG WITH CAR ITSELF, JUST POOR DRIVING.  FRONT
TIRES STILL HAVE CLOSE TO HALF LIFE LEFT.  STILL HAVE REAR
17  TIRES.  *TR

18  • NHTSA COMPLAINT:  TL* THE CONTACT OWNS A 2006 FORD FOCUS.
THE VEHICLE HAS GOODYEAR EAGLE, SIZE 195/60R15.  WHILE
19  DRIVING 40 MPH, THE VEHICLE BEGAN TO SHAKE.  THE VEHICLE
WAS TAKEN TO THE DEALER AND THE TIRES WERE REPLACED
20  BECAUSE   THEY   WERE   WORN.    A   REAR   ALIGNMENT   WAS
PERFORMED FOUR TIMES PRIOR TO THE FAILURE.  THE TIRE AND
21  VEHICLE FAILURE MILEAGE WAS 31,000 AN CURRENT MILEAGE WAS
48,000.  THE CONSUMER PROVIDED INFORMATION ON THE ROAD
22  HAZARD TIRE COVERAGE, INFORMATION ON WEBSITES PERTAINING
TO THE DEFECT, VEHICLE DESCRIPTION AND CONTRACT AND
23  PICTURES OF THE DEFECT.  UPDATED 09/24/07.  *TR UPDATED 10/11/07
*TR
24

25  • NHTSA COMPLAINT:  2007 FORD FOCUS 6 TIRES BOUGHT IN LITTLE
UNDER 30,000 MILES DEALER SAID NOR ROTATING ENOUGH.
26  ANOTHER FORD DEAL SAID IT FOCUS IS A HIGH TIRE MAINTENANCE
CAR GET RID OF IT.  THE WHEEL ALIGNMENTS SO EXTREME TILT
27  TIRES ARE CUPPING ON THE INSIDE BUT IF FACT SPECS.
INDEPENDENT TIRE DEALER SAID THIS IS A TYPICAL FOCUS AND
28  THERE IS A FIX AT THE COST OF $500.00 TO SET THE NUMBERS
CLOSER TO 0 .THE TIRES ARE WEARING IN THE DIRECTION THE TILT

Hicks Thomas LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

1
2
3
SHOWS.   DEALER SAYS ROTATE MORE TIRE DEALER SAYS THE
NUMBERS ARE NOT RIGHT I THINK IF THERE IS A FIX THEN THERE IS
A DESIGN FLAW AND THE DEALER SHOULD PAY FOR THIS BECAUSE
SEEM TO BE A MAJOR ISSUE I SHOULD NOT HAVE TO ROTATE EVERY
3000 MILES.  *TR

4
5
6
7
8
• NHTSA COMPLAINT:   2007 FORD FOCUS.  SEVERE TIRE WOBBLE.
TOOK THE CARE TO DEALER.  THEY SAID IT NEEDED ALIGNMENT
AND 2 NEW TIRES. TOOK TO A TIRE DEALER THEY SAID THAT THEY
HAVE HAD MANY OF THE SAME CARS IN THERE WITH THE SAME
PROBLEM.  IT'S THAT THE REAR WHEELS ARE TOED-IN 50% TO
MUCH FROM THE FACTORY SPECS AND IT JUST CHOPS THE TIRES
UP.  THE CAR NEEDS 2 NEW TIRES AND A ALIGNMENT JOB TO FIX
THE PROBLEM FROM THE FACTORY.  I FEEL THAT THE COMPANY
SHOULD PAY FOR IT , SINCE IT COMES OFF THE LINE LIKE THAT.  *TR

9
10
11
12
13
• NHTSA COMPLAINT:  2007 FORD FOCUS.  I HAVE HAD TO REPLACE
THE TIRES ON MY FORD FOCUS THREE TIMES IN 55,000. MILES.  THE
DEALER SAYS THAT FOCUSES "EAT TIRES" AND THAT I HAVE TO
ROTATE EVERY OIL CHANGE.  THAT DOESN'T EVEN HELP.  I JUST
KEEP BUYING TIRES TO BE SAFE.  SOMEONE WITHOUT RESOURCES
TO BUY NEW TIRES COULD HAVE A BLOW OUT ON THE ROAD AND
IT WOULD BE THE FORD EXPLORER ISSUE ALL OVER AGAIN.  I
SEARCHED THE WEB AND THERE ARE MANY, MANY OTHER FOCUS
OWNERS WITH THE SAME PROBLEM. *TR

14
15
16
17
18
19
• NHTSA COMPLAINT:  THE FORD FOCUS EATS TIRES LIKE CRAZY.  I
HAVE OWNED MY 2007 FOCUS FOR THREE YEARS NOW.  I HAVE TO
PUT NEW TIRES ON IT EVERY 16,000 MILES BECAUSE THE REAR
TIRES       ARE       CUPPING.       I'VE       HAD       THE
ALIGNMENT/SHOCKS/SUSPENSION LOOKED AT AND HAVE BEEN
TOLD THAT THEY ARE FINE.  I HAVE HEARD MANY PEOPLE
COMPLAIN ABOUT HAVING THE SAME PROBLEM WITH THEIR
FOCUS. I ASKED FORD ABOUT THIS PROBLEM AND THEY HAVE NO
SOLUTION.  I WOULD APPRECIATE IT IF YOU LOOKED INTO THIS
ISSUE, AS I KNOW THAT THERE ARE MAY FRUSTRATED DRIVERS
OUT THERE. *TR

20
21
• NHTSA COMPLAINT:   TIRE TREAD SEPARATION ON BOTH REAR
TIRES OF A 2007 FORD FOCUS ZXA SES.CAR ONLY HAD 14,000 MILES
ON THEM.  TIRES WERE REPLACED WITH NEW NATIONAL TIRES.  *TR

22
23
24
25
26
27
28
• NHTSA COMPLAINT: I RECENTLY HAD MY 2007 FORD FOCUS IN FOR
AN OIL CHANGE AND THE AUTOMOTIVE COMPANY TOLD ME I
WOULD NEED TO REPLACE MY TIRES.  I HAVE ROTATED MY TIRES
EVERY OTHER OIL CHANGE TO ENSURE PROPER WEAR AND EVEN
WEAR AND ALSO FOR SAFETY AND MAINTENANCE.   I HAD
APPROXIMATELY 40K MILES AT THAT TIME.   I ASKED THE
AUTOMOTIVE SERVICE COMPANY IF PIRELLI WARRANTIES THE TIRE
AND THEY SAID UNFORTUNATELY NOT.  I WENT TO DISCOUNT TIRE,
THEY TOLD ME THE TIRES NEEDED REPLACING AND THERE IS NO
WARRANTY ON THE TIRE BECAUSE IT IS AN OEM TIRE.  DISCOUNT
TIRE SAID PIRELLI MAKE THAT TIRE DIFFERENTLY FOR THE OEM
THAN THE TIRE DEALERS.  NO WARRANTY.  I WENT TO THE FORD
DEALER AND THE AUTOMOTIVE TECHNICIAN SAID THE TIRES NEED

REPLACING AND THAT THE PIRELLI'S HAVE BEEN, IN HIS WORDS, "JUNK". HE SAID, "MISS, YOU THINK YOUR TIRES ARE BAD, YOU SHOULD SEE THE CUPPING AND AWFUL WEAR AND HAZARD ON THE F150 PICK-UPS AND EXPEDITIONS." I ASKED HIM IF HE TOLD FORD ABOUT THIS AND HE SAID NO. I CONTACTED FORD AND NO ONE CARES TO RENTURN MY CONCERN. PIRELLI TOLD ME FLAT OUT IN AN E-MAIL THAT THE TIRE IS NOT COVERED UNDER ANY PRORATING AND BASICALLY IT IS MY PROBLEM. I COULD HAVE A BLOW OUT OR SOMETHING HAPPEN DUE TO POOR MANUFACTURING. THIS TIRE, THE P6 IS A SAFETY THREAT. NO ONE WILL LISTEN, NO ONE CARES. I WAS SHOCKED BY PIRELLI'S REMARK AND I DID NTO ASK FOR A REPLACEMENT, I WAS JUST THINKING OF SOME TYPE OF PRORATION ON A BETTER TIRE. I ALSO RECOMMENDED TO PIRELLI THAT THEY MIGHT WANT THIS SET FOR THEIR ENGINEERING TEAMS TO REVIEW AND STUDY. I AM SENDING THIS COMPLAINT TO NHTSA BECAUSE I CARE ENOUGH ABOUT OTHER PEOPLE AND WOULDN'T WANT ANYONE INJURED. *TR

- NHTSA COMPLAINT: 2007 FORD FOCUS. I HAVE NOT HAD TWO SIDEWALL TIRE BLOWOUTS ON PIRELLI P6 FOUR SEASON P205 50/16 BLACK SIDEWALLS ON TWO DIFFERENT FORD FOCUS'S IN THE PAST 8 MONTHS. *TR

- NHTSA COMPLAINT: WHILE TRAVELING EAST ON INTERSTATE 10 IN ARIZONA, REAR TIRE (DRIVERS SIDE) ON A 2007 FORD FOCUS SEPARATED (18,000 MILES ON CAR AND TIRES) CAR SLIDE SIDEWAYS INTO THE RIGHT SHOULDER AND FLIPPED TWICE. TOTALED CAR. *TR

- NHTSA COMPLAINT: I BOUGHT THIS NEW 2007 FORD FOCUS ON 8-16-07 AND WHEN I LEFT AND HEADED DOWN THE HIGHWAY MY TIRES WHICH ARE PIRELLI P6 FOUR SEASONS 205/50R16 WERE MAKING A TERRIBLE THUMPING NOISE. I CALLED THE DEALER AND WAS REASSURED BY THE SALESMAN THAT THE IS WHAT HAPPENS WITH LOW PROFILE TIRES. I TALKED TO HIM 5 OR 6 TIMES OVER A 2 TO 3 WEEK PERIOD AND HE KEPT TELLING ME THAT IS THE SOUND OF LOW PERFORMANCE TIRES. WELL I WENT IN FOR MY OIL CHANGE AND HAVE MY TIRES ROTATED AND THEY TOLD ME MY CAR WAS OUT OF ALIGNMENT AND MY TIRES WERE SHOT. THE TWO FRONT ONES WERE WORE ON THE INSIDE AND THE BACK TWO HAD A FUNNY WEAR PATTERN THAT THEY HAD NEVER SEEN BEFORE. THEY ALSO TOLD ME HOW MUCH IT WOULD COST TO HAVE 4 NEW TIRES PUT ON AND A ALIGNMENT. I WENT BACK TO THE DEALER AND I WAS PUT OFF. I WAS TOLD I HAVE NO WARRANTY WITH THE TIRES AS I WAS TOLD BY MY SALESMAN (WHO BY THE WAS IS NO LONGER THERE). I AM UPSET BECAUSE THE SERVICE GUY WHO MADE MY APPOINTMENT SAID THEY ARE SEEING THIS ALOT WITH THE 2007 FORD FOCUS PIRELLI TIRES BUT I AM GOING TO HAVE TO PAY FOR NEW ONES. I DON'T THINK SO THIS IS A PROBLEM I HAVE HAD SINCE I BOUGHT THIS CAR AND SOMETHING SHOULD BE DONE A.S.A.P. BEFORE SOMEONE GETS KILLED OUT ON THE ROAD. *TR

- NHTSA COMPLAINT: 2008 FORD FOCUS. CONSUMER STATES VEHICLE SHOULD BE REPLACED OR A GENEROUS TRADE ALLOWANCE BE OFFERED DUE TO PROBLEMS WITH REAR TIRE

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

Complaint

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

WEAR AND SUSPENSION *TGW THE CONSUMER STATE THE REAR TIRES WERE WEARING UNEVENLY AND EXCESSIVELY.  THE VEHICLE WAS TAKEN TO THE DEALER AND THEY CLAIMED THE PROBLEM WAS FIXED.  HOWEVER, THE TIRES HAD TO BE REPLACED THREE TIMES.  THE CONSUMER STATED THE PROBLEM HAS RETURNED AGAIN.  FORD HAS REFUSED TO PURCHASE THE VEHICLES BACK FROM THE CONSUMER. *JB

- NHTSA COMPLAINT:  TL *THE CONTACT OWNS A 2008 FORD FOCUS. THE CONTACT HAD TO REPLACE THE REAR TIRES ON THE VEHICLES FIVE TIMES.  THE CONTACT TOOK HIS VEHICLE TO THE DEALER FOR MAINTENANCE AND THEY INFORMED HIM THAT THE REAR ALIGNMENT FAILED.  THE VEHICLE WAS NOT REPAIRED.  THE FAILURE MILEAGE WAS 8,000.

- NHTSA COMPLAINT:  I HAVE A 2008 FORD FOCUS, I HAVE REPLACE THE TIRES ON IT 3 TIMES ALREADY DUE TO WEAR THERE IS ONLY 37,000 MILES ON MY CAR.  I HAVE BEEN GIVEN THE RUN AROUND FROM THE FORD DEALER THERE IS A SERIOUS ISSUE WITH THE SUSPENSION ON THESE CARS AND ITS GONING TO CAUSE SERIOUS ACCIDENT OR EVEN DEATH WHEN THESE CARS START TO FAIL EXPECIALLY AT HIGHWAY SPEEDS.  I AM ON MY FOURTH SET OF TIRES AND THEY WILL SOON NEED TO BE REPLACED.  I AM ALSO HEARING A SQUEAKING NOISE COMING FROM THE RIGHT REAR WHEEL. I BELIEVE IT IS ALSO THE SUSPENSION. *TR

- NHTSA COMPLAINT:  2008 FORD FOCUS.  MY TIRES WILL NOT LAST OVER 1000 TO 2000 MILES WITHOUT STARTING TO WHILE FROM CUFFING ON THE EDGES.  FORD DID NOT PROVIDE ANY CAMBER ASJUSTMENT IN FRONT OR BACK AND THE CAR WEARS OUT TIRES VERY QUICKLY.  I HAVE A LITTLE OVER 61,000 MILES ON MY 2008 AND AM ON MY FIFTH SET OF TIRES.  I HAVE ADDED REPLACEMENT ARMS TO THE REAR FOR CAMBER ADJUSTMENT AND CAMBER PLATES TO THE FRONT.  DEALER AT FIRST TOLD ME TO ROTATE MY TIRES MORE OFTEN AND THEN ADMITTED THE FOCUS MODEL HAS A PROBLEM WITH EATING TIRES.  CONTACTED FORD TO NO AVAIL.

- NHTSA COMPLAINT:  2008 FORD FOCUS.  I WENT AND GOT NEW TIRES AND ALIGNMENT IN SEP.2009 AND WITHIN 10000 MILES ON 03-06-10 MY TIRES WERE CHOPPED ON THE INSIDE THE DEALER WERE I HAD GOT MY CAR FROM HAD TOLD ME THAT IT WAS CAUSED BY THE ALIGNMENT SO I WENT BACK WERE I GOT THE TIRES DONE THEY HAD TOLD ME IT WAS MY STRUTS THEY WENT AHEAD AND PUT NEW TIRES ON AND I WENT TO FORD GARAGE IN CRESTON NOT WERE I GOT THE CAR THEY HAD CHECK MY STRUTS THEY SAID THEY WERE OK I HAD THEM REDONE THE ALIGNMENT TWO DAYS AFTER THE NEW TIRES WERE PUT ON AND SO I PAID FOR TWO ALIGNMENT AND AFTER 5000 MILE MY TIRES WERE CHOPPED ON THE INSIDE THE DEALER IN CRESTON GOT A HOLD OF FORD MOTORS TO SEE WHAT THE DEAL WAS AND INSPECT EVERYTHING AND HAD TO SET MY ALIGNMENT AT DIFFERENT SETTING THEN MY CAR STARTED MAKING SQUEAKING NOISES THEY ENDING UP CHANGING MY BACK STRUTS AND THEN MY TIRES GOT WORSE AND MY CAR IS STILL MAKING THE NOISES AND I TOLD THEM THAT THEY SHOULD HAVE TO REPLACE MY TIRES AND THEY WONT AND

NOW THEY WONT EVENING LOOK AT MY CAR AND DIDN'T"T EVENING FIX THE CAR AND HAD IT ALL DAY FOR AT LEAST SIX HOURS AND TOLD ME TO TAKE IT WERE I GOT THE CAR FROM WHICH I LIVE 100 MILES AND FROM THEIR.  THROUGH OUT THIS HOLE TIME THEY HAD THEY HAD TOLD ME THAT IT"S AS BE A PROBLEM ON MOST 2008 AND 2009 MODELS THE CHOPPED THEY ARE TELLING ME IT"S THE BRAND THAT I WENT WITH.  *TR

- NHTSA COMPLAINT:  THE DOOR LOCK, LOCKS AND YOU CANT OPEN THEM TO GET IN OR OUT OF THE CAR IF YOU WONT IN OR OUT YOU HAVE TO CRAWL THROUGH THE WINDOWS.  THE FRONT END OF THE CAR WILL NOT STAY ALIGNED AND EATS UP TIRES.  HEAD LIGHTS. WE HAVE HAD THIS CAR IN THE DEALERS MANY TIMES THEY TELL ME THAT ITS NORMAL.  THIS CAR HAS BEEN A LEMON SINCE THE DAY I DROVE IT OFF THE LOT BUT THEY WOULD NEVER FIX THE PROBLEMS. *TR

- NHTSA COMPLAINT:  I BOUGHT A NEW 2008 FORD FOCUS.  IT HAS 26000 MILES ON IT.  I HAVE ROTATED THE TIRES TWO TIMES AND HAVE PUT ON MY THIRD SET OF TIRES IN THE 26000 MILES.  I COMPLAINED TO THE DEALER AND THEY INSPECTED IT AND SAID THAT THE SUSPENSION AND ALIGNMENT IS COMPLETELY OUT AND ALSO OUT OF WARRANTY AND CAN'S BE ADJUSTED. I NEED TO PUT ON NEW TIRES EVERY 9000 MINES.  THEY CAN REPAIR IT FORM ME AT $1200.00 AND A NEW SET OF TIRES FOR A GRAND TOTAL OF $1700.00 MY EXPENSE.  THIS IS OUTRAGEOUS AND I FEEL IT IS A FACTORY DEFECT AND A SAFETY HAZARD.  I DON'T FEEL SAFE DRIVING THIS AUTO.  THE INTERNET IS FULL OF COMPLAINTS ABOUT THE FORD FOCUS STEMMING BACK TO 2001.  IM A SENIOR CITIZEN, RETIRED AND ON A FIXED INCOME.  THERE IS NO WAY THAT I CAN AFFORD TO HAVE IT REPAIRED AR EVEN TRADE IT OFF FOR THAT MATTER.  IF I COULD TRADE IT OFF THEN SOME POOR SOUL LIKE MYSELF WOULD BE IN DANGER.   THIS IS A ROAD HAZARD AND PEOPLE OWNING THIS PRODUCT SHOULD BE AWARE. HOPEFULLY, SOMETHING CAN BE DONE TO GET THESE RECALLED. UPDATED IVOQ 08/10/10 *TR

- NHTSA COMPLAINT:  TIRES WEAR UNEVEN ON 2008 FORD FOCUS WHICH IS A SAFETY HAZARD ESPECIALLY IN BAD WEATHER.  SO FAR 2 SET OF TIRES HAVE4 BEEN WORN OUT AND WHEN GOING DOWN THE ROAD I AM BEING BOUNCED ALL AROUND.  THEY HAVE NOT SOLUTION TO THE PROBLEM.  *TR

- NHTSA COMPLAINT:  TL* THE CONTACT OWNS A 2008 FORD FOCUS EQUIPPED WITH THE ORIGINAL PIRELLI TIRES, LINE SIZE 205/50/R16. THE CONTACT STATED THAT ALL FOUR TIES WERE WEARING PREMATURELY AND WOULD ONLY LAST FOR 25,000 OF THE 50,000 MILE LIFESPAN OF THE TIRES.  THE TIRES WERE REPLACED WITH KUMHO TIRES AND THE DEALER WAS CONTACTED WHO ADVISED THE CONTACT TO BRING THE VEHICLE IN FOR INSPECTION.  THE MANUFACTURER OFFERED NO ASSISTANCE.  THE DOT NUMBER WAS UNAVAILABLE.  THE FAILURE MILEAGE WAS 28,000.

- NHTSA COMPLAINT:  TL *THE CONTACT OWNS A 2008 FORD FOCUS. THE VEHICLE HAS PIRELLI P6 TIRES, SIZE P205/50/R16.    WHILE

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

DRIVING 55 MPH, THE CONTACT NOTICED THAT THE DRIVER AND PASSENGER SIDE SEATS BEGAN VIBRATING.  THE VEHICLES WAS TAKEN TO THE DEALER WHERE THE CONTACT WAS INFORMED THAT BOTH REAR TIRES WERE CUFFING AND NEEDED TO BE REPLACED.    THE TIRES WERE NOT REPLACED.    THE FAILURE MILEAGE WAS 18000 AND THE CURRENT MILEAGE WAS 20000.

- NHTSA COMPLAINT:  TL *THE CONTACT OWNS A 2008 FORD FOCUS. THE DRIVER STATED THAT HIS VEHICLE BEGAN TO MAKE EXCESSIVE NOISES IN THE REAR OF THE VEHICLE AT APPROXIMATELY 10,000 MILES.  HE TOOK THE VEHICLE TO THE DEALER AND THEY STATED THAT THE TIRES ON HIS VEHICLE WHERE DEFECTIVE AND NEEDED TO BE REPLACED.  THE DRIVER REPLACED THE TIRES WITH GOODYEAR TIRES AND AROUND 13,000 MILES THE VEHICLE STARTED TO HAVE THE IDENTICAL FAILURE. THE DRIVER TOOK THE VEHICLE BACK TO THE DEALER.    THE DEALER TOLD HIM THAT THERE WERE NO RECALLS ON HIS VEHICLE AND THERE WAS NOTHING THEY COULD DO TO ASSIST HIM.  THE DRIVER HAS NOW REPLACED THE TIRES THREE TIMES.  THE NOISE OCCURRED WHILE DRIVING MORE THAN 60 MPH.  THE FAILURE MILEAGE WAS 10,000.  THE CURRENT MILEAGE WAS 24,100.

- NHTSA COMPLAINT:  MY WIFE TOOK OUR 2008 FORD FOCUS IN FOR A ROUTINE OIL CHANGE AND TIRE ROTATION.  THE DEALER STATED THEY COULD NOT ROTATE THE TIRES BECAUSE THE REAR TIRES WERE BAD.  THE "CORDS" IN THE REAR TIRES HAD BROKEN INSIDE THE TIRE AND NOW THEY ARE OUT OF ROUND.  THEY SAID THEY ARE NOT UNDER WARRANTY BECAUSE THE DEALER DID NOT HAVE RECORD OF ROTATING THE WHEELS (BECAUSE I HAD DONE IT AT HOME FOR FREE).  I HAVE BEEN ON MANY INTERNET TIRE WEB SITES AND THE PIRELLI TIRES ARE KNOWN FOR THIS HAPPENING IN SMALLER VEHICLES.  *TR

- NHTSA COMPLAINT:   ON 4/9/09 I WAS DRIVING TO WORK AND I NOTICED A SLIGHT VIBRATION COMING FROM THE LEFT REAR PIRELLI P6 TIRE ON MY 2008 FORD FOCUS. I CHECKED THE TIRE AND DID NOT NOTICE ANY VISIBLE SIGN OF DAMAGE.  ON THE WAY HOME THE VIBRATION GOT MORE SEVERE.  ON ARRIVING HOME I CHECKED THE TIRE AND FOUND ONE SPOT THAT WAS COMPLETELY BALD.  FROM WHEN I CHECKED THE TIRE AT WORK TO WHEN I ARRIVED AT HOME I HAD DRIVER A TOTAL OF LESS THAN 90 MILES FOR THE TIRE TO GO COMPLETELY BALD IN THAT SPOT.  BOTH PIRELLI AND 2 FORD DEALERS CLAIM THERE WERE NOT PROBLEMS WITH THE TIRE, THAT THE DAMAGE WAS DUE TO A IMPROPER USE OF THE EMERGENCY BRAKE, IMPROPER ALIGNMENT OF THE REAR END OF THE VEHICLE, THE TIRE NOT BEING BALANCED OR FAILURE TO ROTATE THE TIRES.  I HAD THE TIRES REPLACED BY A LOCAL MECHANIC. *TR

- NHTSA COMPLAINT:  TL* THE CONTACT OWNS A 2009 FORD FOCUS. THE CONTACT STATED THE REAR TIRES WERE WEARING PREMATURELY AND WERE REPLACED AT 29,000 MILES.    IN ADDITION, WHEN DRIVING AT A SPEED OF AT LEAST 50 MPH, THE REAR OF THE VEHICLES WOULD ABNORMALLY BOUNCE.    THE DEALER ADVISED THAT THE REAR TRANS AXLE WAS SLIGHTLY OFF

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

YET WITHIN SPECIFICATIONS.  THE VEHICLE WAS NOT REPAIRED.
THE FAILURE MILEAGE WAS AT 20,000 AND THE CURRENT MILEAGE
WAS 29,000.

- NHTSA COMPLAINT:  2009 FORD FOCUS.  PRE MATURE TIRE WEAR,
  RIGHT REAR TIRE WORE OUT AT 25,000 MI.  WORE OUT IN 3 AREAS
  DIAGONALLY ACROSS TIRE FACE.  EXCESSIVE VIBRATION AT
  HIGHWAY SPEEDS.  TIRES HAVE BEEN BALANCED 3 DIFFERENT
  TIMES.  NEW TIRES REBALANCED TWICE.  45,000 MILES.  ON VEHICLE
  NOW.  *TR

- NHTSA COMPLAINT:  THE CONTACT OWNS A 2009 FORD FOCUS.
  WHILE DRIVING AT APPROXIMATELY 25 MPH, THE PASSENGER REAR
  TIRES BLEW OUT.  THE DEALER STATED THAT THEY WOULD ONLY
  REPLACE TWO OF THE FOUR TIRES AND REFUSED TO INSPECT THE
  VEHICLE.      THE    CURRENT   AND    FAILURE   MILEAGES   WERE
  APPROXIMATELY 14,000.

- NHTSA COMPLAINT:  NEAR MISS.  I BOUGHT A NEW 2009 FORD
  FOCUS 7 MONTHS AGO; IT HAS 25 MILES ON IT.  I HAVE PUT 18,000
  MILES ON IT SO FAR, MOSTLY IN THE LAST 2 MONTHS.  THE BACK
  STARTS THUMPING AT HIGHWAY SPEEDS ABOUT 1000 MILES AGO SO
  TODAY I TAKE IT IN TO BILL KNIGHT FORD, WHERE I BOUGHT THE
  CAR (74133), AND THEY TELL ME I NEED A REAR END ALIGNMENT
  AND 2 NEW TIRES.  AMAZING ENOUGH, THEY DOWN HAVE THE
  TIRES IN STOCK- IMP GUESSING CAUSE EVERYONE THAT TRADED IN
  THE CLUNKERS 7 MONTHS AGO (TO BUY A FOCUS), ALREADY BEAT
  ME TO THE DEALER SHIP.  IS IT JUST ME OR DOES THE $17,000 CAR
  HAVE PROBLEMS? *TR

38.     Although Ford was aware of the widespread nature of the Suspension Defect in

the Defective Vehicles, and that it caused premature and uneven tire wear in the Defective

Vehicles, Ford took no steps to notify customers of the defect or to provide any relief until July

2010—years after most of the Defective Vehicles had been placed in the marketplace.  At that

late stage, and after most of the Defective Vehicles had already been sold or leased and many

Class Members had already replaced prematurely and unevenly worn tires without adequate

reimbursement, Ford issued at TSB only to its dealers suggesting a temporary correction of the

Suspension Defect (i.e., positioning all alignment settings as close to the middle of the specified

range as possible).

39.     Ford's 2010 TSB, with respect to premature and uneven tire wear on the

Defective Vehicles, applied to all the Defective Vehicles.

40.     Customers have reported the Suspension Defect in the Defective Vehicles to Ford

directly and through its dealers.  Ford is fully aware of the Suspension Defect contained in the

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

Defective Vehicles.  Nevertheless, Ford has actively concealed the existence and nature of the defect from Plaintiffs and the Class Members at the time of purchase or repair and thereafter. Specifically, Ford:

(a)     failed to disclose, at and after the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Defective Vehicles, including the Suspension Defect and, among others, the premature tire replacement repair costs that should have been covered under warranty;

(b)     failed to disclose at the time of purchase or repair that the Defective Vehicles were not in good working order, were defective, and were not fit for their intended purpose;

(c)     failed to disclose and/or actively concealed the fact that the Defective Vehicles were defective, despite the fact that Ford learned of such defects as early as 2005, if not before; and

(d)     failed to disclose and/or actively concealed the fact that as a result of the Suspension Defect consumers would continue to experience premature tire wear problems (as long as they owned the subject vehicles) regardless of how often they balanced their tires and adjusted their alignment.

41.     Ford has not recalled the Defective Vehicles to repair the Suspension Defect, has not offered to its customers a suitable repair or replacement of parts related to the Suspension Defect free of charge, and has not, under warranty, offered to reimburse Class Vehicle owners and leaseholders who incurred costs relating to repairs related to the Suspension Defect.

42.     Class Members have not received the value for which they bargained when they purchased or leased the Defective Vehicles.

43.     As a result of the Suspension Defect, the value of the Defective Vehicles has diminished, including without limitation the resale value of the Defective Vehicles.

44.     Reasonable consumers, like Plaintiffs, expect and assume that a vehicle is not defective and will not cause the tires to wear unevenly and prematurely.  Plaintiffs and Class Members further expect and assume that Ford will not sell or lease vehicles with known safety defects, such as the Suspension Defect, and will disclose any such defect to its consumers when

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

they learn of the defect and offer to repair it under warranty. They do not expect Ford would fail to disclose the Suspension Defect to them, to continually deny the defect, or to attribute the Suspension Defect to normal wear and tear of the tires, Class Members' driving habits, and Class Members' failure to properly maintain and rotate their tires, among other factors—all to avoid millions of dollars in liability and warranty coverage.

45.     Class Members also do not expect Ford to charge them hundreds, and in many instances thousands, of dollars on realignments and replacement of tires for premature wear, when the cause of the premature wear was due to a defect contained in the Defective Vehicles that should have been covered under the vehicles' express warranty. Specifically, Ford has caused Class Members to expend money at its dealerships to repair or replace the Defective Vehicles despite Ford's knowledge of the Suspension Defect.

**Plaintiff Margie Daniel:**

46.     Ms. Daniel purchased a 2011 Ford Focus from Big Valley Ford (an "authorized" Ford dealer) in Stockton, California, on or about January 2, 2011. On March 11, 2011, and with 6,415 miles on the odometer, Ms. Daniel took the car to Big Valley Ford for routine maintenance. On June 6, 2011, and with 12,916 miles on the odometer, Ms. Daniel took the car to the dealership for maintenance. At no time during either of these visits did anybody from the dealership recommend an alignment adjustment for her car.

47.     On August 30, 2011, and with 20,723 miles on the odometer, Ms. Daniel took her car to the same dealership and service manager, Jesse Alvarado, told her that the tires were "no good" and that she needed to purchase new tires because they were worn out. In response, Ms. Daniel said "you must be kidding." Mr. Alvarado insisted that all of the tires needed to be replaced. Ms. Daniel stated that she could not believe the tires wore out this quickly. She left the dealership angry.

48.     Fifteen minutes after leaving the dealership, Ms. Daniel called the dealership and asked if the tires were under warranty. Mr. Alvarado did not offer Ms. Daniel an alignment adjustment. Instead, he told Ms. Daniel that the tires were not under warranty and that it was normal wear and tear for the tires to wear out at 20,000 miles.

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

49.     Ms. Daniel asked Mr. Alvarado "what kind of cheap tires does Ford put on their cars?"  Mr. Alvarado again insisted that it was normal for the tires to wear out at 20,000 miles.  At no time did Mr. Alvarado offer Ms. Daniel an alignment adjustment or repair kit.

50.     On October 16, 2011, Ms. Daniel looked at the tires and confirmed that the tires have inner edge tire wear.

**Plaintiff Robert McCabe:**

51.     In June 2008, Mr. McCabe purchased a new 2008 Ford Focus from Corning Ford Mercury (an "authorized" Ford dealer) in Corning, California, with a standard three year/36,000 mile warranty.  On December 28, 2009 and with 26,040 miles on the odometer, Mr. McCabe took his car to Corning Ford to address problems he was experiencing with the car.  Specifically, Mr. McCabe was experiencing ignition problems, tire vibration, and a loud noise emanating from the tires.  He dealt with service advisor Adam Thibodeau (Tech #1326).

52.     During this visit, Corning Ford recommended that Mr. McCabe repair the ignition system and replace all four tires because according to the technician, they were "totally worn out."  At no time did Corning Ford mention that Mr. McCabe needed an alignment adjustment to properly align the suspension of his vehicle to prevent premature and uneven tire wear.  At that time, Mr. McCabe expressed his dissatisfaction with the tires and the fact that they had worn out so quickly.  The advisor with whom he dealt explained the premature wearing out on the fact that the tires were simply "cheap tires."

53.     Mr. McCabe left Corning Ford Mercury and purchased four new high performance tires from Les Schwab in Corning, California for $320.00.   Specifically, he purchased four 88H Formoza FD-1 all season tires.

54.     In July 2011, and with 48,762 miles on the odometer, Mr. McCabe began experiencing noise and vibration again.  He took his car to Les Schwab in Corning, California to not only have the tires rotated, but to address the vibration and noise.  At that time. Mr. McCabe asked the manager at Les Schwab why the tires were wearing out so quickly.  In response, the manager told Mr. McCabe that "all of the Focuses have a problem with the tires wearing out.  The Focuses are the worst and everybody that has a Focus is coming because the tires wear out

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

faster than any other tire."  Mr. McCabe purchased four new high performance tires in an effort to combat the premature tire wear for $495.30.   Specifically, he purchased four 195/60R-15 88H SS-657 all season tires.

**Plaintiff Mary Hauser:**

55.     In October 2008, Ms. Hauser purchased a new Ford Focus from Walnut Creek Ford (an "authorized" Ford dealer) in Walnut Creek, California, with an extended warranty of 6 years/90,000 miles.  She was never informed by the Dealer of the Suspension Defect.

56.     On January 19, 2010, and with 13,295 miles on the odometer, Ms. Hauser took her car to Jackson Tires because the inner edge of her front tires were bald.  After Jackson Tires recommended that she needed two front tires, she purchased two front tires and an alignment for $185.00.

57.     On November 4, 2010, and with 27,141 miles on the odometer, Ms. Hauser took her car to a local tire shop to have the tires rotated.  The mechanic informed Ms. Hauser that her tires were worn out and that she needed two new rear tires.  Additionally, the mechanic informed Ms. Hauser that she had uneven tire wear.  She purchased those tires for $222.00.

58.     On March 22, 2011, and with 33,433 miles on the odometer, Ms. Hauser noticed that her tires were worn out again.  This time, she took her car to Wal-Mart and purchased two new tires for $281.08.

**Plaintiff Donna Glass:**

59.     Ms. Glass purchased a new Ford Focus in April 2005 from Ukiah Ford Mercury (an "authorized" Ford dealer) in Ukiah, California, with an extended warranty of 5 years/100,000 miles.

60.     Ms. Glass has always had the car serviced on, or near**,** the required date and at her local dealership, Ukiah Ford.  She has purchased many tires over the years and, although she purchased her tires from Les Schwab, she always went to Les Schwab for tires after receiving a Multi Point Inspection Report Card from Ukiah Ford that told her tires were worn or needed to be replaced.  At no time did Ukiah Ford ever offer Ms. Glass a repair kit to properly adjust her car to prevent rapid and uneven tire wear.

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

61.     On January 4, 2007, and with 20,044 miles on the odometer, Ms. Glass purchased four new tires at Les Schwab for $368.28 because her tires were worn.

62.     On June 6, 2009, and with 43,696 miles on the odometer, Ms. Glass again purchased four new tires from Les Schwab for $414.24.  During this visit, the technician at Les Schwab agreed with Ukiah Ford's conclusion that her tires were worn.

63.     On June 8, 2010, Ms. Glass purchased two more new tires for $369.52 because the car was difficult to control.  The car was rattling and shaking.  She asked the technician at Les Schwab to check the tires and he said that they were "worn on the inside" and needed to be replaced.

64.     On July 30, 2010, she had her car aligned at Les Schwab, and Les Schwab replaced the tie rods.

65.     On January 14, 2011, and with 67,690 miles on the odometer, after a routine service check it was indicated that the car needed tires, and she once again purchased two new tires from Les Schwab for $203.49.  During this visit, the technician at Les Schwab agreed with Ukiah Ford's conclusion that her tires were worn.

66.     On July 1, 2011, she began experiencing the same problem with the drivability of the car; specifically, the car was rattling and shaking.  Les Schwab recommended replacing the tie rods again, and she did so.

**Plaintiff Andrea Duarte:**

67.     In February 2007, Ms. Duarte purchased a 2007 Ford Focus from North Bay Ford (an "authorized" Ford dealer) in Santa Cruz, California, with a standard warranty.  A month later, her daughter was driving the vehicle and noticed problems with it.  In March 2007, Ms. Duarte returned the car to North Bay Ford and complained that there was so much vibration that the whole car was shaking.  The dealership confirmed the vibration and informed Ms. Duarte that that was normal for this car and stated that there was no fix for the problem.

68.     On December 12, 2007, and with 6,958 miles on the odometer, Ms. Duarte took the car to the dealership for a checkup.  She was informed by the dealership that she needed four new tires.

Hicks Thomas LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

69.     On August 12, 2008, and with 12,086 miles on the odometer, Ms. Duarte took her car to the dealership for a checkup. The dealership told Ms. Duarte that she needed new tires. In response, Ms. Duarte stated that she could not believe the tires wore out this quickly. Although nobody from the dealership has ever driven with Ms. Duarte's daughter, the dealership blamed the rapid tire wear on her daughter's driving. Baffled and upset, Ms. Duarte left the dealership and wrote a letter to Ford.

70.     On August 16, 2008, and with 12,105 miles on the odometer, Ms. Duarte took the car to Holser's Tire Service and purchased two rear tires for $190.62. During that visit, the representative from Holser's stated that it was not normal for this tire to wear out so quickly.

### TOLLING OF LIMITATIONS

71.     Because the defects in the design or manufacture of the Defective Vehicles cannot be detected until the defect manifests itself, Plaintiffs and Class Members were not reasonably able to discover the problem until after purchasing or leasing the Defective Vehicles, despite their exercise of due diligence.

72.     Plaintiffs and the Class Members had no realistic ability to discern that the Defective Vehicles were defective until they experienced the uneven and premature tire wear and/or vehicle drift. In addition, despite their due diligence, Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Defective Vehicles was concealed from them. Therefore, the discovery rule is applicable to the claim asserted by Plaintiffs and the Class Members.

73.     In addition, even after Class Members contacted Ford and/or its authorized agents for vehicle repairs in California concerning the defective nature of the Defective Vehicles, Plaintiffs and Class Members were routinely told by Ford and/or its authorized agents for vehicle repairs that the Defective Vehicles are not defective and that their uneven and premature tire wear was attributable to causes other than the defects in the Defective Vehicles such as, for example, high or low tire pressure, failure to maintain or rotate tires, or poor driving behavior.

74.     Any applicable statute of limitations has therefore been tolled by Ford's knowledge, active concealment, and denied of the facts alleged herein. Ford is further estopped

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

1    from relying on any statute of limitation because of its concealment of the defective nature of the

2    Defective Vehicles.

3                                    **CLASS ACTION ALLEGATIONS**

4           75.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others

5    similarly situated as members of the proposed Plaintiff Class pursuant to Federal Rules of Civil

6    Procedure 23(b)(3) and/or 23(b)(2).   This action satisfies the numerosity, commonality,

7    typicality, adequacy, predominance, and superiority requirements of those provisions.

8           76.    The proposed Plaintiff Class is defined as:

9           All individuals who purchased or leased any 2005 through 2011 Ford Focus
            vehicle in California and who currently reside in the United States.  The proposed
10          Class representatives are named Plaintiffs Margie Daniel, Robert McCabe, Mary
            Hauser, Donna Glass, and Andrea Duarte.
11

12          77.    Excluded from the proposed Plaintiff Class are (1) Defendant, any entity in which

13   Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and

14   successors; (2) the judges to whom this case is assigned and the their staffs; and (3) those

15   persons who have suffered personal injuries as a result of the facts alleged herein.

16          78.    Plaintiffs reserve the right to amend the Class definition if discovery and further

17   investigation reveal that the Class should be expanded or otherwise modified.

18          79.    <u>Numerosity</u>:  Although the exact number of Class Members is uncertain and can

19   only be ascertained through appropriate discovery, the number is great enough that joinder is

20   impracticable.   The disposition of the claims of these Class Members in a single action will

21   provided substantial benefits to all parties and to the Court.   The Class Members are readily

22   identifiable from information and records in Ford's possession, custody, or control, as well as

23   from records kept by the Departments of Motor Vehicles of various states.

24          80.    <u>Typicality</u>:  The claims of the representative Plaintiffs are typical of the claims of

25   the Class in that the representative Plaintiffs, like all Class Members, purchased and leased

26   Defective Vehicles designed, manufactured, and distributed by Ford.   The representative

27   Plaintiffs, like all Class Members, have been damaged by Ford's misconduct in that they have

28   incurred or will incur the cost of repairing or replacing the defective parts.   Further, the factual

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

1    bases of Ford's misconduct are common to all Class Members and represent a common thread of

2    fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

3        81.    Commonality:   There are numerous questions of law and fact common to

4    Plaintiffs and the Class that predominate over any question affecting only individual Class

5    Members.  These common legal and factual issues include the following:

6        (a)    whether Defective Vehicles suffer from the Suspension Defect;

7        (b)    whether the Suspension Defect constitutes an unreasonable safety risk;

8        (c)    whether Ford knows about the Suspension Defect and, if so, how long Ford has

9    known of the defect;

10       (d)    whether the defective nature of the Defective Vehicles constitutes a material fact;

11       (e)    whether Ford has a duty to disclose the defective nature of the Defective Vehicles

12   to Class Members;

13       (f)    whether the Class Members are entitled to equitable relief, including but not

14   limited to a preliminary and/or permanent injunction;

15       (g)    whether Ford knew or reasonably should have known of the Suspension Defect

16   contained in Defective Vehicles before they sold or leased them to Class Members;

17       (h)    whether Ford breached the Defective Vehicles' express warranty;

18       (i)    whether Ford breach the implied warranty of merchantability;

19       (j)    whether Ford violated express warranty statutes; and

20       (k)    whether Ford violated consumer protection statutes.

21       82.    Adequate Representation:   Plaintiffs will fairly and adequately protect the

22   interests of Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of

23   class actions, including consumer and product defect class actions, and Plaintiffs intend to

24   prosecute this action vigorously.

25       83.    Predominance and Superiority:  Plaintiffs and Class Members have all suffered

26   and will continue to suffer harm and damages as a result of Ford's unlawful and wrongful

27   conduct.   A class action is superior to other available methods for the fair and efficient

28   adjudication of the controversy.  Absent a class action, most Class Members would likely find

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Ford's misconduct. Absent a class action, Class Members will continue to incur damages, and Ford's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

**FIRST CLAIM FOR RELIEF**

(Violation of Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*)

84.    Plaintiffs hereby incorporate by reference the allegations contained in the paragraphs preceding the First Claim for Relief.

85.    Ford is a "person" as defined by California Civil Code § 1761(c).

86.    Ford is "doing business" in Sacramento County within the meaning of California Civil Code § 1780(d). The affidavit described in that subdivision is attached hereto as Exhibit 1.

87.    Plaintiffs and Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

88.    By failing to disclose and concealing the defective nature of the Defective Vehicles from Plaintiffs and prospective Class Members, Ford violated California Civil Code §§ 1770(a)(5) & (7).

89.    Ford's unfair and deceptive acts or practices occurred repeatedly in Ford's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

90.    Ford knew that their Defective Vehicles suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

91.    Ford was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Defective Vehicles and/or the associated repair costs because:

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

(a)     Ford was in a superior position to know the true state of facts about the safety defects contained in the Defective Vehicles;

(b)     Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their vehicles have a dangerous safety defect until they experienced the uneven and premature tire wear and/or vehicle drift; and

(c)     Ford knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the safety defect.

92.     By failing to disclose the Suspension Defect, Ford has knowingly and intentionally concealed material facts and breached its duty not to do so.

93.     The facts concealed or not disclosed by Ford to Plaintiffs and the Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Defective Vehicles, or to pay less for them.  Had Plaintiffs and other Class Members known that the Defective Vehicles were defective, they would not have purchased the Defective Vehicles or would have paid less for them.

94.     Plaintiffs and Class Members are reasonable consumers who do not expect that with proper maintenance their tires would wear unevenly and prematurely.  That is the reasonable and objective consumer expectation for tires.

95.     As a result of Ford's misconduct, Plaintiffs and Class Members have been harmed and have suffered actual damages in that the Defective Vehicles are defective and are continuously causing their tires to wear unevenly and prematurely.

96.     As a direct and proximate result of Ford's unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

97.     Plaintiffs and the Class Members are entitled to equitable relief.

98.     Plaintiffs have provided Ford with notice of their alleged violations of the Consumers Legal Remedies Act pursuant to California Civil Code §1782(a).  Ford failed to provide appropriate relief for such violations.   Therefore, Plaintiffs seek monetary, compensatory, and punitive damages, in addition to injunctive and equitable relief.

///

**SECOND CLAIM FOR RELIEF**

(Violation of California Business & Professions Code §§ 17200, *et seq.*)

99.    Plaintiffs hereby incorporate by reference the allegations contained in the paragraphs preceding the First Claim for Relief.

100.    California Business & Professions Code §§ 17200, *et seq.*, prohibit acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and any "unfair, deceptive, untrue or misleading advertising."

101.    Ford knew its Defective Vehicles suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.  In failing to disclose the Suspension Defect, Ford has knowingly and intentionally concealed material facts and breached its duty not to do so.

102.    Ford was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Defective Vehicles because:

(a)    Ford was in a superior position to know the true state of facts about he safety defect in the Defective Vehicles;

(b)    Ford made partial disclosures about the quality of the Defective Vehicles without revealing the defective nature of the Defective Vehicles; and

(c)    Ford actively concealed the defective nature of the Defective Vehicles from Plaintiffs and Class Members.

103.    The facts concealed or not disclosed by for to Plaintiffs and Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase Defendant's Defective Vehicles, or to pay less for them.  Had Plaintiffs and other Class Members known that the Defective Vehicles suffered from the Suspension Defect described herein, they would not have purchased the Defective Vehicles or would have paid less for them.

104.    Ford continued to conceal the defective nature of the Defective Vehicles even after Class Members began to report problems.  Indeed, Ford continues to cover up and conceal the true nature of the problem.

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

105.    By its conduct, Ford has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

106.    Ford's unfair or deceptive acts or practices occurred repeatedly in Ford's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

107.    As a direct and proximate result of Ford's unfair and deceptive practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

108.    Ford has been unjustly enriched and should be required to make restitution to Plaintiffs and Class Members pursuant to Business & Professions Code §§ 17203 and 17204.

**THIRD CLAIM FOR RELIEF**

(Breach of Implied Warranty in violation of Song-Beverly Consumer Warranty Act,

California Civil Code §§ 1790, *et seq.*)

109.    Plaintiffs hereby incorporate by reference the allegations contained in the paragraphs preceding the First Claim for Relief.

110.    Ford was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Defective Vehicles.  Ford knew or had reason to know of the specific use for which the Defective Vehicles were purchased.

111.    All of the warranties made by Ford with respect to the Defective Vehicles were made for the ultimate benefit of Plaintiffs and other Class Members, and Plaintiffs and other Class Members were the ultimate beneficiaries of any and all contracts by which Ford effected its distribution of the Defective Vehicles.

112.    Ford provided Plaintiffs and other Class Members with an implied warranty that the Defective Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Defective Vehicles are not fit for their ordinary purpose or providing reasonably reliable and safe transportation because, inter alia, the Defective Vehicles suffer from the Suspension Defect that can put the lives of its occupants and other drivers who share the road with them at risk.

113.    Ford impliedly warranted that the Defective Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things:  (i) a warranty

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

that the Defective Vehicles were manufactured, supplied, distributed, and/or sold by Ford were safe and reliable for providing transportation; and (ii) a warranty that the Defective Vehicles would be fit for their intended use while the Defective Vehicles were being operated.

114.    Contrary to the applicable implied warranties, the Defective Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose or providing Plaintiffs and Class Members with reliable, durable, and safe transportation.   Instead, the Defective Vehicles are defective.

115.    Ford's actions, as complained herein, breached the implied warranty that the Defective Vehicles were of merchantable quality and fit for such use, in violation of California Civil Code §§ 1792 and 1792.1.

**FOURTH CLAIM FOR RELIEF**

(Breach of Warranty under Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*)

116.    Plaintiffs hereby incorporate by reference the allegations contained in the paragraphs preceding the First Claim for Relief.

117.    Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

118.    Ford is both a "supplier" and a "warrantor" within the meaning of 15 U.S.C. § 2301(4)-(5).

119.    The Defective Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

120.    Ford's express warranty was a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

121.    Ford's implied warranty was an "implied warranty" with the meaning of 15 U.S.C. § 2301(7).

122.    Ford breached its express and implied warranties by:

(a)    extending a vehicle 3-year/36,000-mile bumper-to-bumper limited warranty, or any extended warranty, thereby warranting to repair or replace any defective part at no cost to the owner or lessee;

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

(b)     selling and leasing Defective Vehicles that were defective in material and workmanship, requiring repair or replacement within the warranty period;

(c)     refusing to honor the express warranty by repairing or replacing, free of charge, defective component parts and, instead, charging for repair and replacement parts; and

(d)     refusing to honor the express warranty by replacing tires that were damaged as a result of the Suspension Defect alleged herein.

123.    Ford's breach of its express and implied warranties deprived the Plaintiffs and other Class Members of the benefits of their bargains.

124.    The amount in controversy of the Plaintiffs' individual claims meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

125.    Ford has been afforded a reasonable opportunity to cure its breach of its express and implied warranties, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the Suspension Defect.

126.    As a direct and proximate result of Ford's breach of its express and implied warranties, Plaintiffs and Class Members sustained damages and other losses in an amount to be determined at trial.  Ford's conduct damaged Plaintiffs and Class Members who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

**FIFTH CLAIM FOR RELIEF**

(Breach of Express Warranty under California Commercial Code § 2313)

127.    Plaintiffs hereby incorporate by reference the allegations contained in the paragraphs preceding the First Claim for Relief.

128.    Ford provided all purchasers and lessees of the Defective Vehicles with the express warranty described herein, which became part of the basis of the bargain.  Accordingly, Ford's express warranty is an express warranty under California law.

///

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

129.     The Defective Vehicles and its component parts, including the tires, were manufactured and/or installed and/or distributed by Ford and are covered by the express warranty.

130.     Ford breached the express warranty by:

(a)     extending a warranty to owners or lessees of the Defective Vehicles, thereby warranting to repair or replace any defect in material or workmanship at no cost to the owner or lessee;

(b)     selling and leasing defective Defective Vehicles that were defective in material and workmanship and requiring repair or replacement within the warranty period; and

(c)     refusing to honor the express warranty by repairing or replacing, free of charge, the vehicle components affected by the Suspension Defect, including the tires, and instead charging for repair and replacement parts.

131.     Plaintiffs (or the prior owners of their Defective Vehicles) notified Ford of the breach within a reasonable time, and/or were not required to do so because affording Ford a reasonable opportunity to cure its breach of written warranty would have been futile.  Ford was also on notice of the Suspension Defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of tires or components of the Defective Vehicles, and through is own maintenance records.

132.     As a direct and proximate result of Ford's breach, Plaintiffs and the other Class Members have suffered damages and continue to suffered damages, including economic damages at the point of sale or lease, i.e., the difference between the value of the vehicles as promised and the value of the vehicle as delivered.  Additionally, Plaintiffs and the other Class Members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

133.     Plaintiffs and other Class Members are entitled to legal and equitable relief against Ford, including damages, consequential damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

///

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

**PRAYER FOR RELIEF**

134.    Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant Ford Motor Company as follows:

(a)    for an order certifying the proposed Plaintiff Class, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

(b)    for declaration that Ford is financially responsible for notifying all Class Members about the defective nature of the Defective Vehicles;

(c)    for an order enjoining Ford from further deceptive distribution, sales, and lease practices with respect to its Defective Vehicles, and to repair the defective components in the Class Members' vehicles and/or replace them with a suitable alternative;

(d)    for any and all remedies afforded by Song-Beverly Consumer Warranty Act, including those specified in California Civil Code § 1794;

(e)    for an award to Plaintiffs and to the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(f)    for a declaration that Ford must disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale or lease of their Defective Vehicles, or make full restitution to Plaintiffs and Class Members;

(g)    for pre-judgment and post-judgment interest as provided by law;

(h)    for attorneys' fees as provided by law, including pursuant to California Code of Civil Procedure § 1021.5;

(i)    for costs of suit;

(j)    for such other and further relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

135.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues triable of right by a jury.

Dated:  November 2, 2011.

///

///

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

/s/ John B. Thomas
John B. Thomas
Eric Grant
Hicks Thomas LLP

J. Allen Carney
Hank Bates
Carney Williams Bates Pulliam & Bowman, PLLC

Counsel for Plaintiffs MARGIE DANIEL,
ROBERT McCABE, MARY HAUSER,
DONNA GLASS, and ANDREA DUARTE

HICKS THOMAS LLP
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

{00143819.DOC}

36

Complaint