UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MARGIE DANIEL, ROBERT MCCABE,       NO. CIV. 2:11-02890 WBS EFB
MARY HAUSER, DONNA GLASS, and
ANDREA DUARTE, individually
and on behalf of a class of         MEMORANDUM AND ORDER RE:
similarly situated                  MOTION FOR SUMMARY JUDGMENT
individuals,                        AND MOTIONS TO EXCLUDE EXPERT
                                    TESTIMONY
          Plaintiffs,

     v.

FORD MOTOR COMPANY, a Delaware
corporation,

          Defendant.
_____/

----oo0oo----

          Plaintiffs Margie Daniel, Robert McCabe, Mary Hauser,

Donna Glass, and Andrea Duarte brought this action against

defendant Ford Motor Company on behalf of themselves and a class

of similarly situated individuals in connection with an alleged

suspension defect in the 2005-2011 Ford Focus.  Currently before

the court are defendant's motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56, (Docket No. 39), and the

1

1  parties' motions to exclude opposing experts' testimony, (Docket

2  Nos. 36-38, 63-65).[1]

3  I.   Factual and Procedural Background

4       Plaintiffs are individuals who purchased new Ford Focus

5  vehicles in California between 2005 and 2011. (See Compl. ¶¶ 46-

6  70 (Docket No. 1); Pls.' Response to Statement of Undisputed

7  Facts ("SUF") ¶¶ 25, 58, 86, 139 (Docket No. 58-1).)  Each

8  plaintiff received a New Vehicle Limited Warranty ("NVLW") with

9  his or her Focus. (SUF ¶¶ 29, 61, 88, 140.)  Plaintiffs allege

10 that the Focus vehicles have a rear suspension

11 "alignment/geometry defect" which leads to premature tire wear,

12 which in turn leads to safety hazards such as decreased control

13 in handling, steering, and stability, as well as the threat of

14 catastrophic tire failure.  (Compl. ¶¶ 17-20.)

15      Defendant allegedly knew or should have known about the

16 alleged defect through pre-release testing data, consumer

17 complaints to defendant's dealers, testing done in response to

18 those complaints, and from other internal sources.  (Id. ¶ 35.)

19 Plaintiffs allege that defendant had a duty to disclose the

20 defect, but failed to do so at the time of sale.  (Id. ¶¶ 22,

21 36.)  Plaintiffs allege that had they known about the defect,

22

23      [1]   Plaintiffs have also filed a motion for class
   certification pursuant to Federal Rule of Civil Procedure 23.
24 (Docket No. 33.)  The court finds that it is reasonable to
   proceed upon defendant's motion for summary judgment before
25 addressing plaintiffs' motion for class certification.  See
   Wright v. Schock, 742 F.2d 541, 544 (9th Cir. 1984) ("It is
26 reasonable to consider a Rule 56 motion first when early
   resolution of a motion for summary judgment seems likely to
27 protect both the parties and the court from needless and costly
   further litigation.")  The court will therefore address
28 plaintiffs' motion for class certification in a separate order.

2

1   they would not have bought the Focus.  (Id. ¶ 31.)  Defendant is

2   also alleged to have sent a technical service bulletin to its

3   dealers acknowledging the problem but never alerted consumers,

4   never offered to repair the defect, and never offered to

5   appropriately reimburse consumers for costs associated with the

6   defect.  (Id. ¶¶ 23, 27-30.)

7          Plaintiffs bring claims for: (1) violation of the

8   California Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et

9   seq.; (2) violation of California's Unfair Competition Law

10  ("UCL"), Cal. Bus. and Prof. Code §§ 17200 et seq.; (3) breach of

11  implied warranty under the Song-Beverly Consumer Warranty Act,

12  Cal. Civ. Code §§ 1790 et seq.; (4) breach of warranty under the

13  Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq.; and (5)

14  breach of express warranty under California Commerical Code

15  section 2313.

16  II.  Motions to Exclude Expert Testimony

17          The parties move to exclude the testimony of their

18  opponents' expert witnesses pursuant to Daubert v. Merrell Dow

19  Pharmaceuticals, Inc., 509 U.S. 579 (1993), and under various

20  evidentiary objections.  (Docket Nos. 36-38, 63-65.)  "Under

21  Daubert, the trial court must act as a 'gatekeeper' to exclude

22  junk science that does not met Federal Rule of Evidence 702's

23  reliability standards by making a preliminary determination that

24  the expert's testimony is reliable."  Ellis v. Costco Wholesale

25  Corp., 657 F.3d 970, 982 (9th Cir. 2011) (citing Kumho Tire Co.

26  v. Carmichael, 526 U.S. 137, 145 (1999)).  Federal Rule of

27  Evidence 702 permits expert testimony if:

28          (a)  the  expert's  scientific,  technical,  or  other

3

> specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  An expert can be qualified "by knowledge, skill, experience, training, or education."  Id.  "A trial court has broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability."  Ellis, 657 F.3d at 982 (citing Kumho Tire, 526 U.S. at 152).

The court acknowledges that Ninth Circuit precedent supports the application of Daubert to expert testimony submitted in support of a motion for summary judgment.  See, e.g., Primiano v. Cook, 598 F.3d 558, 564-68 (9th Cir. 2010); Domingo ex rel. Domingo v. T.K., 289 F.3d 600, 605-07 (9th Cir. 2002).  Indeed, as counsel for defendant has reminded the court, the Daubert case itself arose in the context of a motion for summary judgment.

The court, however, pauses to consider the wisdom of a full Daubert analysis at this stage of the proceedings.  As this court has explained in the context of Daubert motions during a bench trial, "Daubert requires the court to act as a 'reliability gatekeeper' to keep unreliable testimony away from the jury, essentially protecting the jury from junk science."  Crane-Mcnab v. County of Merced, Civ. No. 1:08-1218 WBS SMS, 2011 WL 94424, at *1 (E.D. Cal. Jan. 11, 2011) (emphasis added) (citing Kumho Tire, 526 U.S. at 145).  The gatekeeping function is less pressing where, as here, the court sits as both a modified fact finder seeking to determine whether a genuine issue of material

4

exists and as the Daubert gatekeeper.  Cf. In re Salem, 465 F.3d
767, 777 (7th Cir. 2006) ("Where the gatekeeper and the
factfinder are one and the same--that is, the judge--the need to
make [Daubert] decisions prior to hearing the testimony is
lessened."); United States v. Brown, 415 F.3d 1257, 1269 (11th
Cir. 2005) ("There is less need for the gatekeeper to keep the
gate when the gatekeeper is keeping the gate only for himself.").

        Despite its concerns, the court has considered the
parties' motions under the standards set forth in Daubert and
Kumho Tires, and will deny their motions to exclude the testimony
of their opponent's experts.[2]  The court will also deny the
parties' motions to exclude based upon evidentiary objections
such as lack of foundation.  See Burch v. Regents of Univ. of
Cal., 433 F. Supp. 2d 1110, 1119-22 (E.D. Cal. 2006) (Shubb, J.).

III. Motion for Summary Judgment

        Summary judgment is proper "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  A material fact is one that could affect the outcome
of the suit, and a genuine issue is one that could permit a
reasonable jury to enter a verdict in the non-moving party's
favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).  The party moving for summary judgment bears the initial
burden of establishing the absence of a genuine issue of material
fact and can satisfy this burden by presenting evidence that

---

        [2]   Plaintiffs withdrew their objections to the testimony
of Robert Pascarella.  (Docket No. 77.)  The court, therefore,
makes no finding as to the admissibility of his testimony.

1 negates an essential element of the non-moving party's case.

2 Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

3 Alternatively, the moving party can demonstrate that the

4 non-moving party cannot produce evidence to support an essential

5 element upon which it will bear the burden of proof at trial.

6 Id.

7        Once the moving party meets its initial burden, the

8 burden shifts to the non-moving party to "designate 'specific

9 facts showing that there is a genuine issue for trial.'" Id. at

10 324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,

11 the non-moving party must "do more than simply show that there is

12 some metaphysical doubt as to the material facts." Matsushita

13 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

14 "The mere existence of a scintilla of evidence . . . will be

15 insufficient; there must be evidence on which the jury could

16 reasonably find for the [non-moving party]." Anderson, 477 U.S.

17 at 252.

18        In deciding a summary judgment motion, the court must

19 view the evidence in the light most favorable to the non-moving

20 party and draw all justifiable inferences in its favor. Id. at

21 255.  "Credibility determinations, the weighing of the evidence,

22 and the drawing of legitimate inferences from the facts are jury

23 functions, not those of a judge . . . ruling on a motion for

24 summary judgment . . . ." Id.

25        Plaintiffs do not oppose summary judgment on McCabe's

26 claims, as he is "in the process of withdrawing as a named

27 plaintiff in this action." (Pls.' Opp'n to Motion for Summary J.

28 ("Opp'n to MSJ") at 35:13-14 (Docket No. 58).)  Accordingly,

defendant's motion for summary judgment will be granted as to all claims brought by McCabe.

   A.   CLRA and UCL Claims

        The UCL proscribes as unfair competition "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services."  Cal. Civ. Code § 1770(a).  The CLRA's list of proscribed practices include "[r]epresenting that goods or services have . . . characteristics . . . uses, benefits, or qualities which they do not have," id. § 1770(a)(5), and "[r]epresenting that goods or services are of a particular standard, quality, or grade," id. § 1770(a)(7).

        "Though the language of the CLRA seems to require an actual misrepresentation, omissions are actionable under the CLRA if they are 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'"  Stanwood v. Mary Kay, Inc., --- F. Supp. 2d ----, 2012 WL 7991231, at *7 (C.D. Cal. 2012) (quoting Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 835 (2d Dist. 2006)); see also Tietsworth v. Sears, Roebuck and Co., 720 F. Supp. 2d 1123, 1137 (N.D. Cal. 2010) (holding that plaintiffs stated a claim under the fraudulent prong of the UCL based on an omission).  California federal courts "have generally rejected a broad obligation to disclose," and have instead held that the duty to disclose is limited to safety-related issues.  See Wilson

7

1   v. Hewlett-Packard Co., 668 F.3d 1136, 1141 (9th Cir. 2012)

2   ("California federal courts have generally interpreted Daugherty

3   as holding that '[a] manufacturer's duty to consumers is limited

4   to its warranty obligations absent either an affirmative

5   representation or a safety issue.")

6        Simply establishing a duty to disclose due to a

7   concealed safety issue, however, does not end the analysis.  A

8   private plaintiff bringing an action under the UCL must establish

9   that he or she "has suffered injury in fact and has lost money or

10  property as a result of the unfair competition."  Id. § 17204.

11  The California Supreme Court has held that the language of

12  section 17204 "imposes an actual reliance requirement on

13  plaintiffs prosecuting a private enforcement action under the

14  UCL's fraud prong."  In re Tobacco II Cases, 46 Cal. 4th 298, 326

15  (2009).  Courts have also required reliance in CLRA actions.

16  See, e.g., Mazza v. Am. Honda Motor Co., 666 F.3d 581, 595-96

17  (9th Cir. 2012); In re Sony Gaming Networks & Customer Data Sec.

18  Breach Litig., 903 F. Supp. 2d 942, 969 (S.D. Cal. 2012) (citing

19  Tobacco II for the proposition that "[f]or fraud-based claims

20  under [UCL, CLRA, and FAL] the named Class members must allege

21  actual reliance to have standing"); Withers v. eHarmony, Inc.,

22  Civ No. 09-2266 GHK RCx, 2011 WL 8156007, at *2 (C.D. Cal. Mar.

23  4, 2011) ("Thus, under both the UCL and CLRA, a plaintiff must

24  establish reliance as an essential element for a claim."); Cohen

25  v. DIRECTV, Inc. 178 Cal. App. 4th 966, 980 (2d Dist. 2009)

26  ("[A]ctual reliance must be established for an award of damages

27  under the CLRA.").

28        To some, it might seem logically impossible to

demonstrate reliance on something one was not told.  See Mirkin
v. Wasserman, 5 Cal. 4th 1082, 1093 (1993) (addressing this
argument).  The California Supreme Court, however, specifically
rejected the idea that a defendant need not prove reliance when
basing a claim on an omission and held that, to prove reliance on
an omission, a plaintiff must prove that "had the omitted
information been disclosed one would have been aware of it and
behaved differently."  Id. 1093; see also Johnson v. Harley-
Davidson Motor Co. Group, LLC, 285 F.R.D. 573, 584 (E.D. Cal.
2012) (Mendez, J.); Withers, 2011 WL 8156007, at *2.

A plaintiff may invoke a presumption or inference of
reliance if the alleged omission was material, and materiality is
generally a question of fact.  See Tobacco II, 46 Cal. 4th at
327.  The presumption or inference of reliance, however, "will
not arise where the record will not permit it," Mass. Mut. Life
Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282, 1294 (4th
Dist. 2002), and even if it does arise, may be rebutted, see
Engalla v. Permanente Med. Grp., 15 Cal. 4th 951, 977 (1997).

Thus, even where, as here, a plaintiff bases his claim
not on an omission from a specific advertising campaign or
brochure, but on a defendant's total failure to disclose the
material fact in any way, the plaintiff's claim must fail when he
never viewed a website, advertisement, or other material that
could plausibly contain the allegedly omitted fact.  See Ehrlich
v. BMW of N. A., LLC, 801 F. Supp. 2d 908, 919-920 (C.D. Cal.
2010); Withers, 2011 WL 8156007, at *2-3.

In Ehrlich v. BMW, for example, a plaintiff alleged
that the defendant concealed a windshield cracking defect.

9

1  Noting that the plaintiff "[did] not allege that, before he
2  bought his MINI, he reviewed any brochure, website, or
3  promotional material that might have contained a disclosure of
4  the cracking defect," the court dismissed the plaintiff's CLRA
5  and UCL claims because the complaint was "devoid of allegations
6  that [p]laintiff would have plausibly been aware of the cracking
7  defect before he purchased his MINI had BMW publicized this
8  information." Ehrlich, 801 F. Supp. 2d at 919, 920.  Similarly,
9  in Withers, the plaintiff brought UCL and CLRA claims based upon
10  concealment of a dating website's messaging practices.  The court
11  held that the defendant was entitled to judgment as a matter of
12  law when the plaintiff admitted that he did not read the terms
13  and conditions provided by the defendant, failed to point to any
14  other representation made by the defendant to establish his
15  reliance, and admitted to having formed no belief about the way
16  the defendant's matching services worked before subscribing to
17  defendant's online dating service. Withers, 2011 WL 8156007, at
18  *2-3.

19         By requiring reliance, CLRA and UCL claims differ from
20  failure to warn claims in the product liability context.  A
21  failure to warn claim--while requiring a showing of causation--
22  does not require the plaintiff to establish reliance. See Tucker
23  v. Wright Med. Tech., Inc., 11-CV-03086-YGR, 2013 WL 1149717, at
24  *12 (N.D. Cal. Mar. 19, 2013) (listing elements of a strict
25  liability failure to warn claim); OCM Principal Opportunities
26  Fund v. CIBC World Mkts. Corp., 157 Cal. App. 4th 835, 870 (2d
27  Dist. 2007) (noting that "[t]he elements of reliance and
28  proximate causation are distinct," even though "facts

establishing their existence are often intertwined").  In a
failure to warn claim in the product liability context, "when the
plaintiff is challenging the adequacy of the efforts of the
manufacturer or seller to communicate the dangers of the product
to the buyer or user," "failure to read a warning does not bar
recovery."  Rhodes v. Interstate Battery Sys. of Am., Inc., 722
F.2d 1517, 1519 (11th Cir. 1984); see Hutchinson v. Revlon Corp.
of Cal., 256 Cal. App. 2d 517, 525 (2d Dist. 1967) (noting that
failure to read a warning on a bottle was not dispositive because
"[t]he very defect in a warning may lie in its failure to call
attention to itself").

        Plaintiffs appear to argue that defendant had a duty to
disclose the alleged suspension defect and accompanying premature
tire wear, and because defendant failed to disclose these issues
in a way that was "reasonably calculated" to reach the consumer,
defendant cannot now refute a presumption of reliance.  (See
Pls.' Opp'n to MSJ at 30:5-15).  This argument more closely
resembles a failure to warn claim than a CLRA or UCL claim.  Cf.
Bryant v. Technical Res. Co., 654 F.2d 1337, 1347 (9th Cir.
1981)(noting that the Ninth Circuit has recognized in the context
of a failure to warn case that "the manufacturer has a
responsibility to see that its warnings reach the consumer").  In
contrast, as noted above, the UCL and CLRA require a showing of
reliance--even if through the application of an presumption or
inference--under all circumstances.  The court need not determine
whether plaintiffs' argument could have succeeded in the failure
to warn context, see Rhodes, 722 F.2d at 1519, because plaintiffs

11

did not bring such a claim.[3]   Thus, to the extent plaintiffs wish

to proceed with their UCL and CLRA claims without serious inquiry

into how plaintiffs interacted with defendant's materials and

statements regarding the Focus, the court will not to permit them

to do so.

        Here, even assuming that defendant had a duty to

disclose the defect and tire wear as safety issues, there is no

evidence that plaintiffs researched the maintenance history of

Ford Focuses, read the warranty or maintenance booklets before

buying their vehicles, or otherwise saw Ford materials which

could have plausibly contained any disclosure had it been made.

(See Thomas Decl. Ex. G-1 ("Glass Dep.") at 40:13-42:9, 44:7-

51:4, 62:4-64:3 (Docket No. 47-1); id. Ex. G-2 ("Duarte Dep.") at

42:8-43:4, 120:1-123:1, 128:2-130:1 (Docket No. 47-5); id. Ex. G-

3 ("Hauser Dep.") at 43:12-44:11, 49:14-16, 57:12-59:11 (Docket

No. 47-7); id. Ex. G-5 ("Daniel Dep.") at 56:19-57:18, 80:3-25

(Docket No. 47-9).)[4]   Plaintiffs cannot establish reliance on an

---

        [3]   One reason plaintiffs might have chosen not to pursue a
failure to warn claim is that "[i]n California, plaintiffs may
[only] recover in tort for physical injury to person or property
[and] not for purely economic losses that may be recovered in a
contract action." Waste Mgmt., Inc. v. Ishikawajima-Harima Heavy
Indus., Co., Ltd., No. CIV. S-04-2028 WBS DAD, 2006 WL 2507150,
at *3 (E.D. Cal. Aug. 29, 2006) (Shubb, J.) (internal quotation
marks and citations omitted) (last two alterations in original).
"The California Supreme Court has further clarified that physical
injury to property must consist of 'damage to "other property,"
that is, property other than the product itself.'   The law of
contractual warranty governs damage to the product itself." Id.
(quoting Jimenez v. Superior Court, 29 Cal. 4th 473, 483 (2002)).

        [4]   Duarte "might have" been given a brochure and saw some
unspecified television advertisements. (Duarte Dep. at 40:14-16,
123:2-4.)   Duarte, however, never discussed or researched
maintenance costs and admits that she did not read the warranty
or maintenance materials before purchasing the car.   (See id. at

1   omission in Ford's television advertisements, brochures, or other

2   materials since they "cannot establish that had the information

3   been included [in any of defendant's materials they] would have

4   been aware of it and behaved differently."  Withers, 2011 WL

5   8156007, at *2.

6          Plaintiffs' declarations that they discussed the Focus

7   with local dealership salesmen do not strengthen their claims.

8   (See Pls.' Opp'n to MSJ at 8:21:-9:15, 9:21-22.)  Plaintiffs

9   argue that if the salesmen would have told them about the alleged

10  defect, they would not have bought the Focus.  (See Pls.' Opp'n

11  to MSJ Ex. Y ("Duarte Decl.") ¶ 16 (Docket No. 58-2); id. Ex. Z

12  ("Hauser Decl.") ¶ 2; id. Ex. AA ("Daniel Decl.") ¶ 3; id. Ex. BB

13  ("Glass Decl.") ¶ 2.)  Plaintiffs fail, however, to offer any

14  legal support for the notion that the local dealership salesmen

15  were agents of defendant or were obligated to verbally disclose

16  the alleged defect on behalf of defendant.  Thus, while

17  plaintiffs' declarations might be sufficient to create a

18  presumption or inference of reliance on another entity's

19  omissions, plaintiffs' discussions with local dealership salesmen

20  do not establish a presumption of reliance on defendant's alleged

21  omission.

22

23  42:8-13, 128:2-14, 129:13-21.)  Her declaration submitted in
    opposition to summary judgment establishes that she relied upon
24  discussions with a dealership salesman when deciding whether to
    purchase her Focus.  (See Pls.' Opp'n to MSJ Ex. Y ("Duarte
25  Decl.")  ¶ 16 (Docket No. 58-2).)  Nowhere does her declaration
    mention reliance on any of defendant's print or television
26  advertising materials.
           Similarly, Daniel's declaration establishes that it was
27  conversations and emails with a local dealership salesman that
    established her expectations regarding the Focus.  (See  Pls.'
28  Opp'n to MSJ Ex. AA ("Daniel Decl.") ¶¶ 2-3 (Docket No. 58-2).)

13

1    Without any evidence indicating reliance on defendant's

2   alleged omission or leading to a presumption of reliance,

3   plaintiffs cannot succeed on their UCL and CLRA claims.  Because

4   there is no genuine issue of material fact regarding plaintiffs'

5   reliance, the court will grant defendant's motion for summary

6   judgment on plaintiffs' claims under the CLRA and UCL.[5]

7    B.    Breach of Song-Beverly Consumer Warranty Act

8    The Song-Beverly Act provides, in pertinent part:

9   "Unless disclaimed in any manner prescribed by this chapter,

10  every sale of consumer goods that are sold at retail in this

11  state shall be accompanied by the manufacturer's and the retail

12  seller's implied warranty that the goods are merchantable."  Cal.

13  Civ. Code § 1792.  The seller's "'implied warranty that goods are

14  merchantable'" means, in relevant part, "that the consumer goods

15  . . . [a]re fit for the ordinary purposes for which such goods

16  are used."  Id. § 1791.1.  "Unlike express warranties, which are

17  basically contractual in nature, the implied warranty of

18  merchantability arises by operation of law . . . . [I]t provides

19  for a minimum level of quality."  Am. Suzuki Motor Corp. v.

20

21       [5]    Plaintiffs do not appear to pursue a claim under the
    UCL's "unlawful" prong, which "'borrows violations of other laws
22  and treats them as unlawful practices,' which the UCL then 'makes
    independently actionable,'" Elias v. Hewlett-Packard Co., --- F.
23  Supp. 2d ----, 2012 WL 4857822, at *13 (N.D. Cal. Oct. 11, 2012)
    (quoting Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20
24  Cal. 4th 163, 180 (1999)).  The Complaint alleges that "Ford
    knowingly and intentionally concealed material facts," (Compl. ¶
25  101), implying that the plaintiffs wish to argue under the
    fraudulent prong, and plaintiffs do not argue the unlawful prong
26  in their briefs, (Pls.' Opp'n to MSJ at 16:7-12).  Nor do
    plaintiffs argue the "unfair" prong in their briefs.  The court
27  will accordingly grant summary judgment for defendant on the
    entirety of plaintiffs' UCL claim.
28

14

1  <u>Superior Court</u>, 37 Cal. App.4th 1291, 1295-96 (2d. Dist. 1995).

2          1.  <u>Duration of the Implied Warranty</u>

3       "The duration of the implied warranty of

4  merchantability [under section 1791.1] is coextensive with an

5  express warranty, but in no case is shorter than sixty days or

6  longer than one year following the sale of the goods."

7  <u>Tietsworth v. Sears, Roebuck and Co.</u>, No. C. 09-00288, 2009 WL

8  1363548, at *3 (N.D. Cal. May 14, 2009); <u>see</u> Cal. Civ. Code §

9  1791.1(c); <u>Stearns v. Select Comfort Retail Corp.</u>, No. 08-2746 JF

10  (PVT), 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009); <u>Atkinson</u>

11  <u>v. Elk Corp. of Tex.</u>, 142 Cal. App. 4th 212, 232 (6th Dist.

12  2006).  Here, neither party contests that, due to the express

13  warranties at issue, the plaintiffs' implied warranty under the

14  Song-Beverly Act has a one year duration.

15       "[W]here the alleged defect manifested itself . . .

16  after the one-year period, the Song-Beverly implied warranty

17  claims must be dismissed."  <u>Henderson v. Volvo Cars of N. A.,</u>

18  <u>LLC</u>, Civ. No. 09-4146 (DMC) (JAD), 2010 WL 2925913, at *13

19  (D.N.J. July 21, 2010); <u>see</u> <u>Marchante v. Sony Corp. of Am.</u>, 801

20  F. Supp. 2d 1013, 1021-22 (S.D. Cal. 2011) ("[H]aving purchased

21  the televisions between 2004 and 2005, the implied warranties

22  would have expired by 2006 at the latest.  But Plaintiffs here do

23  not report any issues arising during the one year period.")

24       In arguing against summary judgment due to duration of

25  the Song-Beverly Act implied warranty, plaintiffs rely on <u>Mexia</u>

26  <u>v. Rinker Boat Company, Inc.</u>, 174 Cal. App. 4th 1297 (4th Dist.

27  2009), which held that "latent defects" may breach the implied

28  warranty even when the latent defect was not discovered and

15

1  reported to the seller within the implied warranty's duration.

2  See Mexia, 174 Cal. App. 4th at 1310-11.

3          Despite having been decided almost four years ago, no

4  other California Court of Appeal appears to has cited Mexia

5  favorably for its holding on the duration of implied warranties

6  under the Song-Beverly Act.[6]  In addition, multiple federal

7  district courts--including a recently issued decision in this

8  district--have declined to apply Mexia.   See Rossi v. Whirlpool

9  Corp., Civ. No. 12-125 JAM JFM, 2013 WL 1312105, at *5 (E.D. Cal.

10 Mar. 28, 2013) (Mendez, J.) ("The Court agrees that Mexia is an

11 outlier and declines to apply it in this case."); Marchante, 801

12 F. Supp. 2d at 1022 ("[T]he rule that Mexia proposes is contrary

13 to existing law."); Tietsworth v. Sears, Roebuck and Co., No.

14 5:09-CV-00288 JF HRL, 2009 WL 3320486, at *12 n.6 (N.D. Cal. Oct.

15 13, 2009) (noting that Mexia "appears to be somewhat of an

16 outlier," but finding that the facts before the court did not

17 require the court to determine whether to apply its holding);

18 Hovsepian v. Apple, Inc., Civ. No. 08-5788 JF PVT, 2009 WL

19 2591445, at *8 n.7 (N.D. Cal. Aug. 21, 2009) ("The Court agrees

20 with Apple that the Mexia decision appears to be contrary to

21 established California case law with respect to the duration of

22 the implied warranty of merchantability as set forth in § 1791.1

23

24          [6]   Another case decided before Mexia, Hicks v. Kaufman &
   Broad Corp., 89 Cal. App. 4th 908 (2d Dist. 2001), has noted in
25 the class certification context that "if plaintiffs prove their
   foundations contain an inherent defect which is substantially
26 certain to result in malfunction during the useful life of the
   product they have established a breach of [the defenant's]
27 express and implied warranties."   Hicks, 89 Cal. App. 4th at 923.
   The court's concerns regarding Mexia's holding also apply to
28 Hicks.

of the Song-Beverly Act."). But see Keegan v. Am. Honda Motor Co., Inc., 284 F.R.D. 504, 537 (C.D. Cal. 2012) (citing Mexia with approval); Ehrlich v. BMW of N. A., LLC, 801 F. Supp. 2d 908, 924 (C.D. Cal. 2010) ("The Court will follow Mexia, rather than Hovsepian, to find that Plaintiff can pursue his Song-Beverly Act claim."); Berenblat v. Apple, Inc., No. 08-4969 JF PVT, 2009 WL 2591366, at *3 (N.D. Cal. Aug. 21, 2009) (citing Mexia for the proposition that "a recent decision by the California Court of Appeal has called into question the applicability of the limitation set forth in § 1791.1, at least as it applies to latent defects").

As was the court in Marchante, this court is concerned that the holding of Mexia "renders meaningless any durational limits on implied warranties," as "[e]very defect that arises could conceivably be tied to an imperfection existing during the warranty period." Marchante, 801 F. Supp. 2d at 1022; see also Elias v. Hewlett-Packard Co., --- F. Supp. 2d ----, 2012 WL 4857822, at *6 (N.D. Cal. Oct. 11, 2012) (noting that to recognize an inherent defect exception to the duration of express warranties in consumer goods "would eliminate term limits on warranties, effectively making them perpetual or at least for the 'useful life' of the product" (internal quotation marks and citation omitted)). The court, therefore, declines to adopt Mexia's holding.

Assuming that replacing, or being told to replace, a set of tires before their expected mileage is a manifestation of the alleged suspension defect--an assertion that defendant does not contest, (see Pls.' Opp'n at 18:20-19:24)--the alleged

1  suspension defect became manifest, and therefore the vehicles

2  allegedly became unmerchantable, in Glass, Duarte, and Hauser's

3  vehicles after the implied warranty had expired.  (See SUF ¶¶ 39-

4  40 (Glass tires replaced on January 4, 2007, a year and eight

5  months after purchase); id. ¶¶ 71-76 (Duarte tires replaced

6  around August 12, 2008, a year and six months after purchase);

7  id. ¶¶ 97-102 (Hauser tires replaced around January 19, 2010, a

8  year and three months after purchase).)  The court will therefore

9  grant defendant's motion for summary judgment on these

10 plaintiffs' claims.  See Marchante, 801 F. Supp. 2d at 1021-22;

11 Henderson, 2010 WL 2925913, at *13; Tietsworth 2009 WL 1363548,

12 at *3 ("Although Tietsworth purchased her machine in November

13 2006, the alleged failures did not occur until May 2008.

14 Tietsworth thus has failed to plead facts demonstrating that the

15 machine was unfit for its ordinary purpose during the implied

16 warranty period."); Stearns, 2009 WL 1635931, at *8 (dismissing

17 implied warranty claim with prejudice when "mold was not

18 discovered until at least several years after the purchase of the

19 beds by any of the Plaintiffs").

20         While Glass, Duarte, and Hauser do not present evidence

21 that the vehicle became unmerchantable within the duration of the

22 implied warranty, Daniel was told to replace her tires and did

23 indeed replace them within one year of purchasing her vehicle.

24 (Daniel Dep. at 101:5-22, Exs. 8-9.)  Therefore, summary judgment

25 will not be granted on Daniel's implied warranty claim due to the

26 duration of the implied warranty.

27         2.   Remaining Issues

28         Defendant does not argue that the alleged defect did

18

not render Daniel's vehicle unfit for its ordinary purpose.  <u>See</u> <u>Isip v. Mercedes-Benz USA, LLC</u>, 155 Cal. App. 4th 19, 27 (2d Dist. 2007) ("We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability [under the Song-Beverly Act]."); <u>see also</u> <u>Avedisian v. Mercedes-Benz</u> <u>USA, LLC</u>, No. CV 12-00936 DMG (CWx), 2013 WL 2285237, at *5 (C.D. Cal. May 22, 2013) (assertion that there was a danger of "lacerated fingers" and that the plaintiff has "sustained cuts" because of an alleged interior trim chrome defect was sufficient to plead breach of the implied warranty under the Song-Beverly Act).  Instead, defendant argues that Daniel's evidence is insufficient to show the inner tire wear allegedly associated with the suspension defect.  (Def.'s MSJ at 51:1-6.)

On August 30, 2011, at 20,723 miles, technicians at Big Valley Ford found "front and rear tires in RED" on Daniel's vehicle with "[r]emaining tread depth measured at 3/32 or less." (Pls.' Opp'n Ex. B-16 (Docket No. 41-18).)  Plaintiffs' expert notes that upon inspecting photographs provided by Daniel, "the inner edges of Ms. Daniel's tires had experienced greatly accelerated wear to the inner tread rows. Some of the tread features and voids have worn away from the inner tread row while these features are still clearly visible on the outer tread row. Of particular note is the heavy wear to the inner tread row of the right rear tire."  (Pls.' Mot. for Class Certification Ex. NN ("Lepper Report") at 10 (Docket No. 33-6); <u>see also</u> <u>id.</u> at 7 (noting that "[i]n each vehicle, the temperature at the inner tread row was higher than the inner center, outer center, and

outer tread rows," which "will and did result in the accelerated wear of the tread on the rear tires").)  Defendant, however, argues that <u>all four</u> tires required attention at 20,723 miles, thus the tire wear could be due not to the alleged rear suspension design defect, but another cause.  (<u>See</u> Def.'s Mot. for Summary J. at 51:2-6 (Docket No. 39-1); Def.'s Reply at 39:7-10 (Docket No. 75).)

On this motion for summary judgment, the court must make all reasonable inferences in favor of plaintiffs as the non-moving party.  <u>Anderson</u>, 477 U.S. at 255.  The evidence before the court creates a genuine issue of material fact as to whether Daniel's vehicle was "fit for its ordinary purpose" under the Song-Beverly Act due to excessive inner tire wear.

Accordingly, the court will grant defendant's motion for summary judgment on Glass, Duarte, and Hauser's Song-Beverly Act claims, but will deny defendant's motion for summary judgment as to Daniel's Song-Beverly Act claim.

   C.   <u>Breach of Express Warranty</u>

To begin, plaintiffs do not contest that Hauser failed to take her vehicle to a Ford dealership for a warranted repair, and thus do not oppose summary judgment on Hauser's claim for breach of express warranty.  (Pls.' Opp'n to MSJ at 35:10-11.) Summary judgment will accordingly be granted on her claim.

"'A manufacturer's liability for breach of an express warranty derives from, and is measured by the terms of that warranty.'"  <u>Horvath v. LG Electronics Mobilecomm U.S.A., Inc.</u>, No. 3:11-CV-01576-H-RBB, 2012 WL 2861160, at *5 (S.D. Cal. Feb. 13, 2012) (quoting <u>Cipollone v. Liggett Grp., Inc.</u>, 505 U.S. 504,

525-526 (1992)).  Defendant issued a New Vehicle Limited Warranty ("NVLW") to consumers with the purchase of a new vehicle.

There are two versions of the NVLW at issue here. Glass' 2005 NVLW provides that defendant "will repair, replace, or adjust all parts on your vehicle that are defective in factory-supplied materials or workmanship."  (Def.'s MSJ Ex. G-1 at 6 ("Glass NVLW") (Docket No. 47-4).)  The 2007 NVLW, a materially identical version of which was given to the remaining plaintiffs and which differs from Glass' NVLW, provides that defendant will "repair, replace or adjust all parts on your vehicle that malfunction or fail . . . due to a manufacturing defect in factory-supplied materials or factory workmanship." (Def.'s MSJ Ex. G-2 at 9 ("2007 NVLW") (Docket No. 47-6).)[7]  Both warranties provide this defective parts coverage for three years or 36,000 miles. [8]

"[A]n express warranty covering 'materials and workmanship' does not include design defects."  In re Toyota Corp Unintended Acceleration Litig., 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010); see Rice v. Sunbeam Prods., Inc., No. CV 12-7923-CAS-(AJWx), 2013 WL 146270, at *12 (C.D. Cal. Jan 7, 2013) ("[T]he phrase 'free from defects in material and workmanship' . . .

---

[7]   Neither party submits a copy of Daniel's express warranty, but both parties appear to agree that "in all relevant respects, the warranty that came with [Daniel's] vehicle was identical to the warranty that came with Ms. Duarte's vehicle." (SUF ¶ 140.)

[8]   Glass' NLVW covers uneven or rapid tire wear to 12,000 miles or 1 year.  (Glass NVLW at 9.)  Duarte and Daniel's express warranties cover labor on defective tires for 3 years or 36,000 miles and cover parts for defective tires on a pro rata basis, with defendant paying one hundred percent of part replacement only until 12,000 miles. (See Duarte and Daniel NVLW at 10.)

refers only to manufacturing defects, not design defects."); <u>Horvath</u>, 2012 WL 2861160, at *5 ("[A]n express warranty for 'materials and workmanship' does not protect against design defects under California law . . . ."); <u>Brothers v. Hewlett-Packard Co.</u>, No. C-06-02254 RMW, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007) ("[T]he Limited Warranty does not guarantee against design defects, it guarantees against defects in materials and workmanship. . . . Unlike defects in materials or workmanship, a design defect is manufactured <u>in accordance with</u> the product's intended specifications." (emphasis in original)).

As a California district court has explained:

> "California recognizes two distinct categories of product defects: manufacturing defects and design defects . . . . A manufacturing defect exists when an item is produced in a substandard condition . . . . Such a defect is often demonstrated by showing the product performed differently from other ostensibly identical units of the same product line . . . . A design defect, in contrast, exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective."

<u>In re Toyota Corp.</u>, 754 F. Supp. 2d at 1181 (quoting <u>McCabe v. Am. Honda Motor Co.</u>, 100 Cal. App. 4th 1111, 1120 (2d Dist. 2002)).

Here, plaintiffs do not allege or argue that their vehicles "performed differently from other ostensibly identical units of the same product line." <u>In re Toyota Corp.</u>, 754 F. Supp. 2d at 1181. To the contrary, plaintiffs' theory is that "all class vehicles, by design, have a suspension defect." (Pls.' Opp'n to MSJ at 1:14-15.) Since plaintiffs rely exclusively upon a theory of design defect, plaintiffs may not bring their claims under the provisions of the NVLWs which

provide that Ford repair or replace "all parts on your vehicle

that are defective in factory-supplied materials or workmanship,"

(Glass NVLW at 6 (emphasis added)), or "parts on your vehicle

that malfunction or fail . . . due to a manufacturing defect in

factory-supplied materials or factory workmanship," (2007 NVLW at

9 (emphasis added)).

Plaintiffs' argument that the 2007 NVLW covers design

defects is unconvincing.  (Pls.' Opp'n to MSJ at 30:3-12.)

Plaintiffs point to language in the NVLW explaining that:

> Defects may be unintentionally introduced into vehicles
> during the design and manufacturing processes and such
> defects could result in the need for repairs.  For this
> reason, Ford provides the New Vehicle Limited Warranty in
> order to remedy any such defects that result in vehicle
> part malfunction or failure during the warranty period.

(2007 NVLW at 9 (emphasis added).)  This provision, however, only

expresses the general aims of the NVLW. It does not expand

defendant's obligation to "repair, replace or adjust all parts on

your vehicle that malfunction or fail . . . due to a

manufacturing defect in factory-supplied materials or factory

workmanship."  (Id.)  It would be contrary to the common

understanding of automobile warranties to extend warranty

coverage to design defects absent clear language providing for

such coverage.  Cf. In re Toyota Corp., 754 F. Supp. 2d at 1180-

81.

Because the defective parts provisions of the NVLWs do

not cover design defects and plaintiffs clearly state that they

are not alleging a breach of any other provision of the express

warranty, such as the tire wear provisions, (see Pls.' Opp'n to

MSJ at 23:20-24:5), defendant's motion for summary judgment will

1  accordingly be granted as to plaintiffs' express warranty claims.

2      D.   Magnuson-Moss Warranty Act Claims

3          Title 15 U.S.C. § 2310(d) provides that "a consumer who

4  is damaged by the failure of a supplier, warrantor, or service

5  contractor to comply with any obligation under this chapter, or

6  under a written warranty, implied warranty, or service contract,

7  may bring suit for damages and other legal and equitable relief.

8  . . ."  Here, the parties agree that, as in Clemens v.

9  DaimlerChrysler Corp., 534 F.3d 1017 (9th Cir. 2008), plaintiffs'

10 Magnuson-Moss Act claims "stand or fall with [their] express and

11 implied warranty claims under state law."  Clemens, 534 F.3d at

12 1022.  Since Daniel has shown a genuine issue of material fact as

13 to breach of a Song-Beverly Act implied warranty, summary

14 judgment will accordingly be denied as to her Magnuson-Moss

15 Warranty Act claim.  See Keegan, 838 F. Supp. 2d at 956-57

16 ("Currently, Keegan has successfully alleged a claim under the

17 Song-Beverly Act, and Zdeb has successfully alleged a claim under

18 Florida's express warranty law.  If plaintiffs are able to allege

19 other express and implied warranty claims in any amended

20 complaint, the Magnuson-Moss Act will provide a cause of action

21 for those claims as well.").  The court will grant defendant's

22 motion for summary judgment as to the remaining plaintiffs'

23 Magnuson-Moss Warranty Act claims.

24          IT IS THEREFORE ORDERED that:

25     (1)  the parties' motions to exclude testimony be, and the

26 same hereby are, DENIED;

27     (2) defendant's motion for summary judgment be, and the same

28 hereby is, DENIED as to Daniel's claims under the Song-Beverly

                                24

1  Act and the Magnuson-Moss Warranty Act, and GRANTED as to all

2  other claims of all plaintiffs.

3  DATED:   June 6, 2013

4

5  _____

WILLIAM B. SHUBB

6  UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25