UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MARGIE DANIEL, ROBERT MCCABE, MARY HAUSER, DONNA GLASS, and ANDREA DUARTE, individually and on behalf of a class of similarly situated individuals,<br><br>    Plaintiffs,<br><br>  v.<br><br>FORD MOTOR COMPANY, a Delaware corporation,<br><br>    Defendant.<br>_____/ | NO. CIV. 2:11-02890 WBS EFB<br><br><u>MEMORANDUM AND ORDER RE:</u><br><u>MOTION FOR CLASS CERTIFICATION</u> |

----oo0oo----

Plaintiffs Margie Daniel, Robert McCabe, Mary Hauser, Donna Glass, and Andrea Duarte brought this action against defendant Ford Motor Company on behalf of themselves and a class of similarly situated individuals in connection with an alleged suspension defect in the 2005 to 2011 Ford Focus. Currently before the court is plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23. (Docket No. 33.)

1

I.   Factual and Procedural Background

Plaintiffs generally allege that the 2005 to 2011 Ford Focus vehicles have a rear suspension "alignment/geometry defect" which leads to premature tire wear, which in turn leads to safety hazards such as decreased control in handling, steering, and stability, as well as the threat of catastrophic tire failure. (Compl. ¶¶ 17-20 (Docket No. 1); see June 7, 2013 Order at 2:4-3:15 (Docket No. 84).)  In its June 7, 2013 Order, the court granted defendant's motion for summary judgment on all claims except Daniel's claims for breach of a Song-Beverly Act implied warranty and violation of the Magnuson-Moss Warranty Act.  Daniel now seeks to certify a class consisting of "[a]ll individuals who purchased or leased any 2005 through 2011 Ford Focus vehicle in California and who currently reside in the United States." (Compl. ¶ 76 (Docket No. 1).)  Persons who have suffered personal injuries as a result of the alleged suspension defect are excluded from the class.  (Id. ¶ 77.)

II.   Discussion

"'Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23.'" Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012) (quoting Zinser v. Accufix Res. Inst., Inc., 253 F.3d 1180, 1186, amended by 273 F.3d 1266 (9th Cir. 2001)).  "For a class to be certified, a plaintiff must satisfy each prerequisite of Rule 23(a) of the Federal Rules of Civil Procedure and must also establish an appropriate ground for maintaining class actions under Rule 23(b)."  Stearns v. Ticketmaster Corp., 655 F.3d 1013,

2

1019 (9th Cir. 2011).

Federal Rule of Civil Procedure 23(a) "requires that plaintiffs demonstrate numerosity, commonality, typicality, and adequacy of representation in order to maintain a class action." Mazza, 666 F.3d at 588. "[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" Id. (second alteration in original) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2555 (2011)). "The plaintiff must demonstrate 'the capacity of the classwide proceedings to generate common answers' to common questions of law or fact that are 'apt to drive the resolution of the litigation.'" Id. (quoting Wal-Mart, 131 S. Ct. at 2551). The Ninth Circuit has held that "commonality only requires a single significant question of law or fact," and has noted that a plaintiff bears only a "limited burden under Rule 23(a)(2) to show that there are questions of law or fact common to the class." Id. (internal quotation marks omitted).

In order to maintain a class action, a plaintiff must also satisfy Rule 23(b)[1] as well as Rule 23(a). In this case,

---

[1] Rule 23(b)(3) provides that,

A class action may be maintained if Rule 23(a) is satisfied and if:
\* \* \*

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The

3

the only basis for class certification argued by plaintiffs is Rule 23(b)(3), (see Pls.' Mot. for Class Certification ("Class Cert.") at 19:15-24:16 (Docket No. 33)).[2]  Under Rule 23(b)(3), "a plaintiff must demonstrate the superiority of maintaining a class action and show 'that questions of law or fact predominate over any questions affecting only individual members.'"  Mazza, 666 F.3d at 588 (quoting Fed. R. Civ. P. 23(b)(3)).  "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  Comcast v. Behrend, 133 S. Ct. 1426, 1432 (2013) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623-24 (1997)).

"The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  Wang v.

---

matters pertinent to these findings include:

   (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

   (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

   (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

   (D) the likely difficulties in managing a class action.

[2]  The court notes that the Complaint originally alleged a class action under Rules 23(b)(3) and 23(b)(2). (Compl. ¶ 75.) Since Daniel has failed to make any argument in support of certification under Rule 23(b)(2), she has failed to satisfy her burden of affirmatively demonstrating that she meets the requirements for class certification under that section.

4

Chinese Daily News, Inc., 709 F.3d 829, 835 (9th Cir. 2013) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998)). "The main concern of the predominance inquiry . . . 'is the balance between individual and common issues.'" Id. (quoting In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009)). While "[t]here is no mathematical or mechanical test for evaluating predominance," Messner v. Northshore Univ. HealthSystem, 669 F.3d 902, 814 (7th Cir. 2012), courts have a duty "to take a close look at whether common questions predominate over individual ones," Comcast, 131 S. Ct. at 1432.

"The party seeking certification has the burden of affirmatively demonstrating that the class meets the requirements of [Rule 23]." Mazza, 666 F.3d at 588 (citing Wal-Mart, 131 S. Ct. at 2551). The rigorous analysis necessary for class certification "will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" Comcast, 133 S. Ct. at 1432 (quoting Wal-Mart, 131 S. Ct. at 2551). "That is so because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id. (internal quotation marks and citations omitted).

The Song-Beverly Act provides, in pertinent part: "Unless disclaimed in any manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. The seller's "'implied warranty that goods are

5

merchantable'" means "that the consumer goods . . . [a]re fit for the ordinary purposes for which such goods are used." Id. § 1791.1.  "Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law . . . . [I]t provides for a minimum level of quality." Am. Suzuki Motor Corp. v. Superior Court, 37 Cal. App. 4th 1291, 1295-96 (2d Dist. 1995).

As for the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d) provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief. . . ." Here, the parties agree that, as in Clemens v. DaimlerChrysler Corp., 534 F.3d 1017 (9th Cir. 2008), Daniel's Magnuson-Moss Warranty Act claim "stand[s] or fall[s] with [her] . . . implied warranty claim[] under state law." Clemens, 534 F.3d at 1022.

Expert witness Thomas Lepper explains the theory behind Daniel's case. A suspension system has certain alignment settings, including toe,[3] camber,[4] and track.[5] (Class Cert. Ex.

---

[3] "Toe is defined as the difference in the angle or distance of the front and rear of the tire in reference to the centerline of the vehicle. Toe change turns the front of the tire inward or outward in reference to the center of the vehicle." (Lepper Report at 6 n.9.)

[4] "Camber is defined as the tilting of the top of the tire inward or outward in reference to the center of the vehicle." (Lepper Report at 6 n.10.)

[5] Track change occurs when "wheels move towards and away from each other" laterally. (Class Cert. Ex. MM ("Tkacik Report") at 13 (Docket No. 33-6).)

6

NN at 6 ("Lepper Report") (Docket No. 33-6).)  As a car moves along, it encounters changes in the road surface which cause the tires to travel upward and compress the suspension, a movement called "jounce" or "bump."  (Id.)  This movement changes the toe angle, a movement also called "bump steer," changes the camber angle, and changes the track width.[6]

Through her experts, Daniel contends that "the rear wheel alignment is not sufficiently controlled through its normal range of travel," causing "an unacceptable amount of toe change" which "scrub[s] the tires' tread across the roadway and generate[s] the accelerated tread wear."  (Id.; see also id. Ex. MM at 3 ("Tkacik Report") (Docket No. 33-6) (noting that the Focus will experience "[h]igh tread wear when the vehicle is driven on bumpy roads" because "the tires scrub laterally about an inch . . . each time the car bounces a mere plus and minus one inch").)  Andrew Webb, another expert, found the degree of bump steer on a tested 2007 Focus to be twice as high as a 2012 model Focus, after Ford had allegedly fixed the suspension defect in its production vehicles.  (Id. Ex. LL at 6-8 ("Webb Report") (Docket No. 33-6).)

In addition, "the excessive track, toe, and camber changes that occur as the suspension moves upward (jounce) and downward (rebound) produced . . . substantial loads on the inner edge of the rear tires."  (Lepper Report at 6.)  "This became apparent as higher temperature was generated on the vehicles'

---

[6] As in the June 7, 2013 Order, the court finds all expert testimony admissible under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  (See June 7, 2013 Order at 5:8-11.)

7

rear tires' inner tread row during the test drive."  (Id.) Expert Thomas Tkacik notes that "[a] gradient of tire temperatures about 6 [deg] F higher at the inside shoulders across these vehicles is the result of a combination of rear toe and camber," and "[a]lthough higher wear with higher temperature seems intuitively obvious, it is also supported by experimental results."  (Tkacik Report at 5.)

        Daniel argues that premature tire wear, which leads to loss of control of the vehicle, renders the vehicle unfit for its ordinary purpose under the Song-Beverly Act.  Even assuming that the class proposed by Daniel satisfies commonality, typicality, adequacy, and numerosity, the court must deny Daniel's motion for class certification because individual issues would predominate over common issues under Rule 23(b)(3).  See In re Toyota Motor Corp. Hybrid Brake Mkting. Liab. Litig., 288 F.R.D. 445, 449 (N.D. Cal. 2013) ("Although there are serious questions as to whether Plaintiffs can satisfy the commonality, typicality, and adequacy requirements of Rule 23(a), the Court need not address those questions because Plaintiffs cannot clearly satisfy the predominance requirement of Rule 23(b).").

    A.   <u>What qualifies as fit for the Focus' ordinary purpose is not a common question.</u>

        At least some California courts have "reject[ed] the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability [under the Song-Beverly Act]."  Isip v. Mercedes-Benz USA, LLC, 155 Cal. App. 4th 19, 27 (2d Dist. 2007).  For example, a vehicle that "lurches, clanks, and emits

8

smoke over an extended period of time is not fit for its intended purpose." Id. Allegations of lacerations from an interior chrome defect are also sufficient to state a claim for breach of the Song-Beverly Act implied warranty. See Avedisian v. Mercedes-Benz USA, LLC, No. CV 12-00936 DMG (CWx), 2013 WL 2285237, at *5 (C.D. Cal. May 22, 2013).

Here, Daniel argues that the suspension defect created an unmerchantable vehicle because the defect led to "premature tire wear," which in turn led to safety concerns such as loss of control. At oral argument, Daniel's counsel suggested that premature tire wear should be defined as tire wear that happens before it would have otherwise occurred without the alleged suspension defect.

The record indicates that buyers of the Focus could choose from various tire options which may or may not have shared similar estimated mileage ratings. (Def.'s Mot. for Summary J. ("MSJ") Ex. E. ¶ 11 ("Kalis Decl.") (Docket No. 45).) Class members who replaced their original tires may have chosen replacement tires with varying estimated mileage ratings.

According to Daniel's theory, whether a vehicle was rendered unmerchantable by the alleged suspension defect will entail the individualized comparison between the mileage at which a tire needed replacing and its otherwise expected mileage. (See id. Ex. G-10 at 140:16-21 ("Lepper Dep.") (Docket No. 47-14) ("Q: If I understand you correctly, then, your definition of premature tire wear depends on which brand of tire is on the vehicle because all of the brands are rated at different tire lifes; right? A: That's correct.").) Daniel produces evidence that her

9

1  Hankook tires required replacement at 20,723 miles, well under
2  their estimated mileage of 60,000 miles.  (See id. Ex. G-5
3  (Docket No. 47-9).)  A jury's decision on whether replacement of
4  her Hankook tires at 20,723 miles rendered her vehicle
5  unmerchantable, however, does not answer whether a class member's
6  vehicle was rendered unmerchantable by having its tires replaced
7  at 40,000 miles for the same Hankook tires, nor does it answer
8  the question of whether replacement at 20,723 miles would render
9  a vehicle unmerchantable when another brand of tire's estimated
10 mileage was significantly lower.  There is no evidence in the
11 record that the suspension defect led to tire replacement at a
12 common mileage or percentage of a tire's estimated mileage.

13         A class member's "implied warranty claim would require
14 an individual determination of whether the a [sic] plaintiff's
15 [vehicle] was fit for its ordinary purpose given the defect could
16 render certain [vehicles] more inoperable than others.  This is a
17 significant concern for class certification . . . ."  Tietsworth
18 v. Sears, 720 F. Supp. 2d 1123, 1148 (N.D. Cal. 2010).

19         Therefore, the court finds that whether a class
20 member's vehicle was rendered unfit for its ordinary purpose is
21 not a question common to the class.

22    B.   Whether the alleged defect arose within the implied
23         warranty period is not a common question.

24         "The duration of the implied warranty of
25 merchantability [under section 1791.1] is coextensive with an
26 express warranty, but in no case is shorter than sixty days or
27 longer than one year following the sale of the goods."
28 Tietsworth v. Sears, Roebuck and Co., No. C. 09-00288, 2009 WL

10

1363548, at *3 (N.D. Cal. May 14, 2009); see Cal. Civ. Code § 1791.1(c); Stearns v. Select Comfort Retail Corp., No. 08-2746 JF (PVT), 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009); Atkinson v. Elk Corp. of Tex., 142 Cal. App. 4th 212, 232 (6th Dist. 2006).  Here, neither party contests that, due to the express warranties at issue, Daniel's implied warranty under the Song-Beverly Act had a one-year duration.

"[W]here the alleged defect manifested itself . . . after the one-year period, the Song-Beverly implied warranty claims must be dismissed."  Henderson v. Volvo Cars of N. A., LLC, Civ. No. 09-4146 (DMC) (JAD), 2010 WL 2925913, at *13 (D.N.J. July 21, 2010); see Marchante v. Sony Corp. of Am., 801 F. Supp. 2d 1013, 1021-22 (S.D. Cal. 2011) ("[H]aving purchased the televisions between 2004 and 2005, the implied warranties would have expired by 2006 at the latest.  But Plaintiffs here do not report any issues arising during the one year period.").

Daniel urges this court to follow Keegan v. American Honda Motor Co., Inc., 284 F.R.D. 504 (C.D. Cal. 2012), in holding that the duration of the Song-Beverly implied warranty is no bar to class certification because "cases such as Hicks[v. Kaufman & Broad Corp., 89 Cal. App. 4th 908 (2d Dist. 2001),] have applied the 'substantial certainty' requirement to . . . implied warranty claims."  Keegan, 284 F.R.D. at 537 (citing Hicks' statement that "if plaintiffs prove their foundations contain an inherent defect which is substantially certain to result in malfunction during the useful life of the product they have established a breach of Kaufman's express and implied warranties," see Hicks, 89 Cal. App. 4th at 923).  As explained

11

in its June 7, 2013 Order, the court declines to rely upon <u>Hicks</u> and <u>Mexia v. Rinker Boat Company, Inc.</u>, 174 Cal. App. 4th 1297 (4th Dist. 2009), as the <u>Keegan</u> court did, for to do so would "'render[] meaningless any durational limits on implied warranties,' as '[e]very defect that arises could conceivably be tied to an imperfection existing during the warranty period.'" (June 7, 2013 Order at 16:24-28 n.1, 17:12-24 (alterations in original) (quoting <u>Marchante</u>, 801 F. Supp. 2d at 1022).)

Assuming that replacing, or being told to replace, a set of tires before their expected tire mileage is a manifestation of the alleged suspension defect--an assertion that defendant does not contest, (<u>see</u> Pls.' Opp'n at 18:20-19:24)--the alleged suspension defect became manifest in Daniel's vehicle, and therefore her vehicle allegedly became unmerchantable, within the one-year implied warranty period. (Pls.' Resp. to Def.'s Statement of Undisputed Facts ¶¶ 139, 146 (Docket No. 58-1).) The same does not appear to be true, however, for all potential class members. Since the proposed class is not limited to those individuals who were told to replace their tires within the one-year period, the class appears to include members whose alleged defect arose after the one-year period had expired, if it arose at all. The over inclusive nature of the proposed class is demonstrated by the court's analysis in the June 7, 2013 Order, in which three of the original plaintiffs' claims were dismissed due to a manifestation of the alleged defect after the one-year period had expired. (<u>See</u> June 7, 2013 Order at 17:25-18:26.)

Whether the proposed class members' defects arose within the implied warranty period, therefore, is not a common

12

question.

### C. Whether the tire wear allegedly experienced by the class members was caused by the defect is not a common question.

To show breach of a Song-Beverly Act implied warranty, "a plaintiff must show not only that the good did not meet the standard, but also that the plaintiff was harmed, and that the failure of the product to have the expected quality was a substantial factor in causing that harm." Webb v. Carter's, Inc., 272 F.R.D. 489, 504 (C.D. Cal. 2011). "The presence of a defect, without more, does not establish harm." Id.

In Wolin v. Jaguar Land Rover North America, LLC, 617 F.3d 1168 (9th Cir. 2010), the Ninth Circuit held that, when a warranty requires that a claimant show that "tire wear is caused by a defect in the vehicles," the claims for breach of that warranty "do not easily satisfy the predominance test." Wolin, 617 F.3d at 1174. "A determination whether the defective alignment caused a given class member's tires to wear prematurely requires proof specific to that individual litigant." Id. Explaining that "tires deteriorate at different rates depending on where and how they are driven," the court noted that "whether [the tires] wore out prematurely and as a result of the alleged alignment defect, are individual causation and injury issues that could make classwide adjudication inappropriate." Id. While Wolin was addressing an express tire warranty which required causation in its terms, the court finds Wolin's reasoning equally applicable to Daniel's implied warranty claim at issue here.

While Daniel has presented evidence that her rear tires

13

experienced the type of tire wear allegedly associated with the suspension defect, (see Pls.' Opp'n to Motion for Summary J. Ex. B-16 (Docket No. 41-18); Lepper Report at 10), Daniel's experts admit that driving habits, failure to properly maintain the vehicle, and other actions by a vehicle's owner can cause premature tire wear, (see Def.'s MSJ Ex. G-9 at 102:24-103:12 ("Webb Dep.") (Docket No. 47-13); id. Ex. G-11 at 103:15-104:2 ("Tkacik Dep.") (Docket No. 47-15); Lepper Dep. 137:23-138:16, 141:16-25). Resolving whether the alleged suspension defect caused the tire wear in Daniel's vehicle will not resolve the same question for other class members who might have experienced different types of tire wear caused by different factors.

Therefore, whether the alleged suspension defect caused the proposed class members' injuries is not a common question.

Since individual questions will predominate over questions common to the class, the court will accordingly deny plaintiffs' motion for class certification under Rules 23(b)(3).

IT IS THEREFORE ORDERED that plaintiffs' motion for class certification be, and the same hereby is, DENIED.

DATED:   June 17, 2013

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE