1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12  MARGIE DANIEL, individually        CIV. NO. 2:11-02890 WBS EFB
    and on behalf of a class of
13  similarly situated               MEMORANDUM AND ORDER RE: MOTION
    individuals,                     FOR CLASS CERTIFICATION
14
              Plaintiff,
15
         v.
16
    FORD MOTOR COMPANY, a
17  Delaware corporation,

18            Defendant.

19

20                         ----oo0oo----

21         Plaintiff Margie Daniel brought this action against

22  defendant Ford Motor Company alleging a defect in rear suspension

23  geometry in new 2005 through 2011 Ford Focus vehicles ("class

24  vehicles").[1]  Presently before the court is plaintiff's renewed

25  ─────────────────
           [1]      There were originally five named plaintiffs in this
26  action, but the court entered summary judgment against plaintiffs
    Robert McCabe, Mary Hauser, Donna Glass, and Andrea Duarte.  (See
27  June 6, 2013 Order at 20 (Docket No. 84); May 17, 2016 Order at
    3, 22 (Docket No. 107).)  Plaintiff Daniel is the only remaining
28  plaintiff.

                                1

1    motion for class certification.  (Pl.'s Renewed Mot. to Certify

2    Class ("Pl.'s Renewed Mot.") (Docket No. 111).)

3    I.    Factual and Procedural Background

4         In January 2011, plaintiff purchased a class vehicle in

5    California.  (Def.'s Opp'n at 3 (Docket No. 114).)  She alleges

6    that class vehicles have an "alignment/geometry defect" in their

7    rear suspensions that leads to premature tire wear, which, in

8    turn, leads to safety hazards such as decreased control in

9    handling, steering, and stability, and threat of catastrophic

10   tire failure.  (Compl. ¶¶ 17-20 (Docket No. 1).)  Plaintiff

11   brings claims for: (1) breach of express warranty under

12   California Commercial Code section 2313; (2) breach of implied

13   warranty under the Song-Beverly Consumer Warranty Act, Cal. Civ.

14   Code §§ 1790-1795.8; (3) breach of warranty under the Magnuson-

15   Moss Warranty Act, 15 U.S.C. §§ 2301-2312[2]; (4) violation of the

16   California Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-

17   1784; and (5) violation of California's Unfair Competition Law

18   ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210.  (Id. at 28-34.)

19        In an Order dated June 6, 2013, the court granted

20   defendant's motion for summary judgment on all claims and entered

21   final judgment in its favor.  (June 6, 2013 Order at 24-25

22   (Docket No. 84).)  On June 17, 2013, the court denied plaintiffs'

23   motion for class certification.  (June 17, 2013 Order at 14

24   (Docket No. 85).)

25        [2]    The parties stipulate that pursuant to the Ninth
26   Circuit's opinion in this case, "class certification of
     [plaintiff's claims brought under the Magnuson-Moss Warranty Act]
27   should stand or fall with class certification of [plaintiff's
     express and implied warranty claims under state law]."  (Pl.'s
28   Reply at 10 n.6.)

2

1    Plaintiffs appealed the summary judgment Order and the

2    Ninth Circuit reversed on all claims.  Daniel v. Ford Motor Co.,

3    806 F.3d 1217 (9th Cir. 2015).  In its opinion, the Ninth Circuit

4    stated, "In light of our reversal, we also instruct the district

5    court to reconsider its denial of Plaintiffs' motion for class

6    certification."  Id. at 1227.

7    On remand, defendant moved for renewed summary judgment

8    on several grounds that the Ninth Circuit declined to address on

9    appeal.  (See Def.'s Renewed Mot. for Summ. J., Br. (Docket 101-

10   1).)  This court denied defendant's renewed motion for summary

11   judgment as to Daniel and granted it as to all other plaintiffs.

12   (May 17, 2016 Order at 22 (Docket No. 107).)

13   Presently before the court is plaintiff's renewed

14   motion for class certification.  Plaintiff seeks to certify a

15   class of "individuals who purchased or leased any class vehicle

16   in California and who currently reside in the United States."

17   (Pl.'s Reply at 1 (Docket No. 116).)  Counsel for plaintiff

18   represented at oral argument and in plaintiff's renewed motion

19   that plaintiff does not seek to include in her class purchasers

20   who have sold their vehicles.  (Pl.'s Renewed Mot. at 1.)

21   II.  Legal Standard

22   To certify a class, plaintiff must satisfy the

23   'numerosity,' 'commonality,' 'typicality,' and 'adequacy of

24   representation' requirements of Federal Rule of Civil Procedure

25   23(a).  Fed. R. Civ. P. 23.  Plaintiff must also establish an

26   appropriate ground for bringing a class action under Rule 23(b).

27   Id.

28   "Rule 23 does not set forth a mere pleading standard. A

3

1  party seeking class certification must affirmatively demonstrate

2  his compliance with the Rule . . . ." Wal-Mart Stores, Inc. v.

3  Dukes, 564 U.S. 338, 350 (2011). "[C]ertification is proper only

4  if the trial court is satisfied, after a rigorous analysis, that

5  the prerequisites of Rule 23(a) have been satisfied." Id. at

6  350-51 (internal quotation marks and citation omitted).

7  "Frequently that rigorous analysis will entail some overlap with

8  the merits of the plaintiff's underlying claim." Id. at 351

9  (internal quotation marks, brackets, and citations omitted).

10  "Merits questions may be considered to the extent--but only to

11  the extent--that they are relevant to determining whether the

12  Rule 23 prerequisites for class certification are satisfied."

13  Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S. Ct.

14  1184, 1195 (2013).

15  III. Analysis

16      A.   Numerosity

17          "[N]umerosity is presumed where the plaintiff class

18  contains forty or more members." In re Cooper Companies Inc.

19  Sec. Litig., 254 F.R.D. 628, 634 (C.D. Cal. 2009); see also,

20  e.g., Collins v. Cargill Meat Solutions Corp., 274 F.R.D. 294,

21  300 (E.D. Cal. 2011) (Wanger, J.). Plaintiff estimates, and

22  defendant does not dispute, that the class in this case would

23  include "tens of thousands" of people. (See Pl.'s Renewed Mot.

24  at 12; Def.'s Opp'n at 13.) Accordingly, plaintiff has satisfied

25  'numerosity.'

26      B.   Commonality and Predominance

27          The 'commonality' requirement of Rule 23(a)(2) requires

28  that the plaintiff show that "there are questions of law or fact

4

1  common to the class."  Fed. R. Civ. P. 23(a)(2).  "All questions

2  of fact and law need not be common to satisfy [Rule 23(a)(2)].

3  The existence of shared legal issues with divergent factual

4  predicates is sufficient, as is a common core of salient facts

5  coupled with disparate legal remedies within the class."  Hanlon

6  v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  "What

7  matters to class certification . . . [is] the capacity of a

8  class[-]wide proceeding to generate common answers apt to drive

9  the resolution of the litigation."  Wal-Mart, 564 U.S. at 350

10  (quoting Richard A. Nagareda, Class Certification in the Age of

11  Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).  Class

12  members' claims "must depend upon a common contention . . . [that

13  is of] such a nature that it is capable of classwide resolution--

14  which means that determination of its truth or falsity will

15  resolve an issue that is central to the validity of each one of

16  the claims in one stroke."  Id.

17       Rule 23(b)(3), under which plaintiff seeks

18  certification, requires that "questions of law or fact common to

19  class members predominate over questions affecting only

20  individual members."  Fed. R. Civ. P. 23(b)(3).  The

21  'predominance' inquiry "tests whether proposed classes are

22  sufficiently cohesive to warrant adjudication by representation."

23  Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 623 (1997).

24  "Because Rule 23(a)(3) already considers commonality, the focus

25  of the Rule 23(b)(3) predominance inquiry is on the balance

26  between individual and common issues."  Murillo v. Pac. Gas &

27  Elec. Co., 266 F.R.D. 468, 476 (E.D. Cal. 2010) (citing Hanlon,

28  150 F.3d at 1022).  The 'predominance' requirement subsumes the

1  'commonality' requirement, <u>Georgine v. Amchem Prod., Inc.</u>, 83

2  F.3d 610, 627 (3d Cir. 1996), <u>aff'd sub nom.</u> <u>Amchem</u>, 521 U.S.

3  591, and is more difficult to satisfy, <u>Comcast Corp. v. Behrend</u>,

4  133 S. Ct. 1426, 1432 (2013).

5          1.   <u>Express Warranty</u>

6          The 2007 through 2011 Focus warranty,[3] under which

7  plaintiff brings her express warranty claim, states:

8     [I]f:

9     --your Ford vehicle is properly operated and
10    maintained, and

11    --was taken to a Ford dealership for a warranted
      repair during the warranty period,
12

13    then authorized Ford Motor Company dealers will,
      without charge, repair, replace, or adjust all parts
14    on your vehicle that malfunction or fail during normal
      use during the applicable coverage period due to a
15    manufacturing defect in factory-supplied materials or
      factory workmanship. . . .
16

17    Defects may be unintentionally introduced into
      vehicles during the design and manufacturing processes
18    and such defects could result in the need for repairs.
      For this reason, Ford provides the New Vehicle Limited
19

   _____

20    [3]   The warranty for 2005 through 2006 Focuses covers "all
   parts on [the customer's] vehicle that are defective in factory-
21 supplied materials or workmanship."  (Pl.'s Mot. to Certify Class
   Exs. F-G, 2005-2006 Ford Focus New Vehicle Limited Warranty
22 (Docket No. 33-2).)  That the 2005 through 2006 warranty may
   differ materially from the 2007 through 2011 warranty does not
23 defeat a finding of 'commonality' and 'predominance' with respect
   to plaintiff's express warranty claim, as such differences need
24 only be noted once for all class members.  See <u>Hanlon</u>, 150 F.3d
   at 1019 ("All questions of fact and law need not be common to
25 satisfy [Rule 23].  The existence of shared legal issues with
   divergent factual predicates is sufficient, as is a common core
26 of salient facts coupled with disparate legal remedies within the
   class."); <u>Melgar v. CSk Auto, Inc.</u>, No. 13-CV-03769-EMC, 2015 WL
27 9303977, at *11 (N.D. Cal. Dec. 22, 2015) (holding that potential
   necessity of subclasses does not defeat 'predominance' finding).
28

                              6

1
2

> Warranty in order to remedy any such defects that
> result in vehicle part malfunction or failure during
> the warranty period.

3 (Pl.'s Mot. to Certify Class ("Pl.'s Mot.") Exs. H-L, 2007-2011

4 Ford Focus New Vehicle Limited Warranty ("Focus NVLW") (Docket

5 No. 33-2).)   The Ninth Circuit has held in this case that "[t]he

6 warranty must be construed to guarantee against . . . design

7 defects."  Daniel, 806 F.3d at 1225.

8         Plaintiff has provided evidence that an alleged rear

9 suspension geometry defect in class vehicles causes premature

10 tire wear.  (See, e.g., Pl.'s Renewed Mot. at 8 ("Ford did alert

11 its dealers to the [Focus'] rear suspension problem . . .

12 [informing them] that some of these vehicles 'may exhibit

13 premature front and/or rear tire wear.'" (citing Pl.'s Mot. Ex.

14 B, Ford Internal Records)); id. at 10 ("[A] Consulting Engineer .

15 . . with nearly two decades in design engineering and related

16 fields in private industry, has opined that the Class Vehicles

17 have a common rear suspension defect, which causes . . .

18 premature tire wear.").)  Defendant's own engineer testified that

19 all class vehicles are built with the same rear suspension

20 geometry.  (See Pl.'s Mot. Ex. HH, Eric Kalis Deposition

21 Transcript ("Kalis Deposition") at 160:4-161:15 (conceding that

22 "suspension hard points" was fundamentally same for class

23 vehicles) (Docket No. 33-6).)  Because the court can resolve the

24 central question in plaintiff's express warranty claim--whether

25 the rear suspension geometry is defective--once for all class

26 members, plaintiff has met 'commonality' with respect that claim.

27 See Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172

28

1   (9th Cir. 2010) (plaintiffs "easily satisfy the commonality

2   requirement" by alleging suspension geometry defect in same make

3   and model of vehicle covered by same warranty).

4          Defendant notes that the warranty requires "malfunction

5   or fail[ure] during normal use during the applicable coverage

6   period" for coverage to apply.  (Def.'s Opp'n at 14, 22.)

7   Because determining "normal use" and "malfunction . . . during

8   the applicable coverage period" requires examining individual

9   class members' driving habits and vehicles, the argument goes,

10  resolution of plaintiff's express warranty claim cannot take

11  place on a class-wide basis.  See id.  Plaintiff responds that

12  whether class vehicles malfunction during "normal use" and "the

13  applicable coverage period" is irrelevant because design defects

14  like the one she alleges, by definition, cause malfunction "from

15  the moment each class vehicle left the factory."  (See Pl.'s

16  Reply at 6.)  Under that theory, it matters not how class members

17  used their vehicle or at what point the tires needed replacement,

18  as the tires would always wear faster with the alleged defect

19  than without.  (Id. at 8-9.)  In light of the Ninth Circuit's

20  holding that defendant's 2007 through 2011 express warranty

21  covers design defects like the one plaintiff alleges, the court

22  must hold in favor of plaintiff on this issue.

23         Defendant further points out that there are "47

24  configurations" of class vehicles and each configuration differs

25  with respect to tire wear and handling.  (Def.'s Opp'n at 16.)

26  Rear suspension geometry, according to defendant, is one of many

27  mechanical factors that determine how quickly tires wear, how

28  much they wear, and how soon they need to be replaced.  (See id.

1   at 18-22.)  Plaintiff's experts do not deny this, according to

2   defendant.  (See id. at 9-11.)  Because mechanical factors and

3   other factors affecting tire wear (e.g., individual driving

4   habits) vary from class member to class member, the argument

5   goes, tire wear will also vary by class member.  (See id. at 17.)

6   That variance, defendant argues, precludes class certification.

7          Plaintiff's theory of liability, however, does not

8   depend on the extent of tire wear or even the rate of tire wear

9   itself.  Instead, it depends on the rate of tire wear relative to

10  how quickly the tires would wear without the alleged defect.

11  (See Pl.'s Reply at 8-9.)  Plaintiff's experts have provided

12  support for her express warranty claim under that theory by

13  opining that all class vehicles experienced premature tire wear,

14  (see Pl.'s Mot. Ex. LL, Op. Report of Andrew Webb at 2; id. Ex.

15  NN, Op. Report of Thomas Lepper at 3-4), a position which their

16  concession about variances in degree or absolute rate of tire

17  wear does not undermine.

18          Defendant's argument about variance in tire wear is

19  ultimately an argument about damages under plaintiff's theory of

20  liability.  With respect to that argument, the Ninth Circuit has

21  held that damage calculations, while necessarily individual in

22  nature, do not defeat class certification.  Yokoyama v. Midland

23  Nat. Life Ins. Co., 594 F.3d 1087, 1089 (9th Cir. 2010) ("[T]he

24  amount of damages is invariably an individual question and does

25  not defeat class action treatment." (internal quotation marks and

26  citation omitted)); Pulaski & Middleman, LLC v. Google, Inc., 802

27  F.3d 979, 988 (9th Cir. 2015) ("Yokoyama remains the law of this

28  court, even after Comcast."), cert. denied, 136 S. Ct. 2410

1   (2016).  That holding applies in products liability cases.  See

2   Edwards v. Ford Motor Co., 603 F. App'x 538, 541 (9th Cir. 2015)

3   (individual damage calculations do not defeat class certification

4   in vehicle defect case).

5          Because the Ninth Circuit has validated plaintiff's

6   theory of liability in this case, see Daniel, 806 F.3d at 1225,

7   defendant cannot defeat class certification merely by showing

8   that class members' tires wore to different degrees or at

9   different rates.  So long as plaintiff is able to show that the

10  tires wore prematurely across the class, her request to certify

11  her express warranty claim survives defendant's 'variance'

12  argument.[4]  See Vaquero v. Ashley Furniture Indus., Inc., 824

13  F.3d 1150, 1154 (9th Cir. 2016) (holding that while plaintiff

14  must prove that "damages resulted from the defendant's conduct,"

15  "different damage calculations do not defeat predominance").

16         Defendant also argues that causation, a required

17  element under the express warranty, (see Focus NVLM (requiring

18  malfunction or failure "due to" defect)), cannot be resolved on a

19  class-wide basis.  (See Def.'s Opp'n at 25.)  As explained above,

20  plaintiff need only prove that the alleged defect caused some,

21  not necessarily the same, damage to class vehicles.  Vaquero, 824

22  F.3d at 1154.  The court can resolve that question on a class-

23  wide basis because all class vehicles share the same rear

24  _____

25         [4]   The court recognizes the possibility that some
    purchasers of class vehicles may have sold their vehicles prior
26  to replacing or experiencing noticeable issues with their tires.
    Such class members would find it difficult to quantify any
27  damages at all.  However, plaintiff no longer seeks to include
    purchasers who have sold their vehicles in her class.  (Pl.'s
28  Renewed Mot. at 1.)  Accordingly, the issue is moot.

1    suspension geometry.  _See_ _Wolin_, 617 F.3d at 1172 (holding that

2    "whether the [class vehicle's] alignment geometry was defective"

3    due to its tendency to cause premature tire wear was a common

4    question).

5            Susceptibility to statute of limitations defenses in

6    some class members' cases does not overcome class certification.

7    _See_ _Cameron v. E.M. Adams & Co._, 547 F.2d 473, 478 (9th Cir.

8    1976) ("[E]ven if there exists questions of individual compliance

9    with the Oregon statute of limitations, they are not sufficient,

10   on balance, to negate the predominance of the common issues.");

11   _Williams v. Sinclair_, 529 F.2d 1383, 1388 (9th Cir. 1975) ("Given

12   a sufficient nucleus of common questions, the presence of the

13   individual issue of compliance with the statute of limitations

14   has not prevented certification of class actions in securities

15   cases."); _Tait v. BSH Home Appliances Corp._, 289 F.R.D. 466, 486

16   (C.D. Cal. 2012) ("[C]ourts have been nearly unanimous . . . in

17   holding that possible differences in the application of a statute

18   of limitations to individual class members, including the named

19   plaintiffs, does not preclude certification of a class action."

20   (internal quotation marks and citation omitted)).  Neither does

21   the question of whether class members took their vehicles in for

22   repair during warranty periods, which the parties can efficiently

23   resolve using defendant's records or a claim form.  _See_ _Melgar v._

24   _CSk Auto, Inc._, No. 13-CV-03769-EMC, 2015 WL 9303977, at *11

25   (N.D. Cal. Dec. 22, 2015) (individual inquiries that can be

26   resolved via claim form or similar process do not defeat

27   'predominance').

28           Plaintiff has shown that the court can resolve the

11

1    central question in her express warranty claim--whether the rear

2    suspension geometry in class vehicles caused premature tire wear-

3    -on a class-wide basis.  Because individual inquiries in this

4    case do not hold much weight for purposes of Rule 23's

5    'predominance' test under the relevant authorities, the court

6    finds that plaintiff has met 'predominance' with respect to her

7    express warranty claim.  See Wolin, 617 F.3d at 1172 (where

8    plaintiffs allege suspension geometry defect in same make and

9    model of vehicle covered under same express warranty, a

10   'predominance' finding is proper).

11              2.   Implied Warranty

12              As an initial matter, defendant argues that the Ninth

13   Circuit's opinion in this case did not affect this court's

14   earlier decision to deny class certification on plaintiff's

15   implied warranty claim.  Defendant is mistaken, as the Ninth

16   Circuit instructed this court to "reconsider its denial of

17   [plaintiff's] motion for class certification."  Daniel, 806 F.3d

18   at 1227.  Plaintiff's motion to certify her implied warranty

19   claim for class action is presently before this court.

20              With respect to that claim, the Song-Beverly Act

21   requires that "every sale of consumer goods that are sold at

22   retail in this state shall be accompanied by the manufacturer's

23   and the retail seller's implied warranty that the goods are

24   merchantable."  Cal. Civ. Code § 1792.  The implied warranty of

25   merchantability guarantees that goods: "(1) Pass without

26   objection in the trade under the contract description. (2) Are

27   fit for the ordinary purposes for which such goods are used. (3)

28   Are adequately contained, packaged, and labeled. (4) Conform to

1   the promises or affirmations of fact made on the container or

2   label." Id. § 1791.1.  Plaintiff's implied warranty claim only

3   alleges breach of fitness for ordinary purpose.  (Compl. ¶¶ 112-

4   115.)

5        In the context of motor vehicles, fitness for ordinary

6   purpose means that "the product is in safe condition and

7   substantially free of defects." Brand v. Hyundai Motor Am., 226

8   Cal. App. 4th 1538, 1546 (4th Dist. 2014) (internal quotation

9   marks and citations omitted), as modified on denial of reh'g

10  (July 16, 2014); Isip v. Mercedes-Benz USA, LLC, 155 Cal. App.

11  4th 19, 23 (2d Dist. 2007) (stating the same); Am. Suzuki Motor

12  Corp. v. Superior Court, 37 Cal. App. 4th 1291, 1297 (2d Dist.

13  1995) (stating the same), as modified on denial of reh'g (Sept.

14  21, 1995).

15       The Ninth Circuit has held in this case that "[a]

16  reasonable fact finder could infer that a vehicle that

17  experiences premature and more frequent tire wear would pose an

18  unreasonable safety risk." Daniel, 806 F.3d at 1226.  Plaintiff

19  has provided evidence that an alleged defect in rear suspension

20  geometry causes premature tire wear on class vehicles, (see Pl.'s

21  Renewed Mot. at 8), and that all class vehicles share the same

22  rear suspension geometry, (see Pl.'s Reply at 3 (citing Kalis

23  Deposition at 160:4-161:15).)  Plaintiff has shown that the court

24  can resolve whether the vehicles were merchantable--the central

25  issue in her implied warranty claim--on a class-wide basis.[5]

26  _____

27       [5]  Defendant directs the court's attention to Kramer v.
    Toyota Motor Corp., No. 13-56433, 2016 WL 4578370 (9th Cir. Sept.
    2, 2016), in which the Ninth Circuit upheld denial of class
28  certification of plaintiffs' Song-Beverly and CLRA and UCL claims

1   Accordingly, plaintiff has met 'commonality' with respect to that

2   claim.

3          Defendant raises the same issues concerning damages,

4   causation, statute of limitations, and vehicle misuse that it

5   raised with respect to plaintiff's express warranty claim.  (See

6   Def.'s Opp'n at 30-32.)  Because the court has addressed those

7   issues in the preceding section, it will not do so in detail

8   here.  Suffice to repeat that such issues, while undisputedly

9   individual in nature, do not hold much weight for purposes of

10  Rule 23's 'predominance' test under relevant authorities.

11         Defendant also argues, specifically with respect to

12  plaintiff's implied warranty claim, that whether class vehicles

13  constitute "consumer goods" within the meaning of the Song-

14  Beverly Act differs as to each class member.  (Id. at 28.)

15  "[C]onsumer goods" under the Act requires that a given product is

16  "used, bought, or leased for use primarily for personal, family,

17  or household purposes."  Cal. Civ. Code § 1791.  This is another

18  question the parties can efficiently resolve via a claim form or

19  similar process.  It will not dominate litigation.  See Melgar,

20  2015 WL 9303977, at *11.

21

22  because plaintiffs did not produce evidence of a common defect in
    the Toyota Prius' braking system.  Id. at *1-2.  That case is

23  easily distinguishable.  There, the Ninth Circuit based its
    decision on the fact that plaintiffs failed to produce "any

24  evidence of a common defect."  Id. at *2 (internal quotation
    marks and citation omitted).  Here, plaintiff has produced

25  evidence of a common defect.  (See Pl.'s Renewed Mot. at 10
    (citing defendant's internal communications indicating existence

26  of a "rear suspension problem" in class vehicles); Kalis
    Deposition at 160:4-161:15 (conceding that "suspension hard

27  points" was fundamentally same for class vehicles).)
    Accordingly, Kramer does not control this case.

28

14

1      Under the Ninth Circuit's opinion in this case, this
2  court can resolve whether an alleged defect in rear suspension
3  geometry rendered the class vehicles unsafe, and thus whether the
4  vehicles were merchantable, on a class-wide basis.  Other
5  inquiries do not outweigh that question.  <u>See</u> <u>Wolin</u>, 617 F.3d at
6  1173 (where plaintiffs allege suspension geometry defect in same
7  make and model of vehicle, a 'predominance' finding is proper
8  with respect to their implied warranty of merchantability
9  claims).  Accordingly, the court finds that plaintiff has met
10  'predominance' with respect to her implied warranty claim.

11           3.   <u>CLRA and UCL Claims</u>

12      The CLRA prohibits certain "unfair methods of
13  competition and unfair or deceptive acts or practices undertaken
14  by any person in a transaction intended to result or which
15  results in the sale or lease of goods or services."  Cal. Civ.
16  Code § 1770(a).  Among these are "[r]epresenting that goods or
17  services have . . . characteristics . . . uses, benefits, or
18  qualities which they do not have," <u>id.</u> § 1770(a)(5), and
19  "[r]epresenting that goods or services are of a particular
20  standard, quality, or grade . . . if they are of another," <u>id.</u> §
21  1770(a)(7).  The UCL proscribes "any unlawful, unfair or
22  fraudulent business act or practice and unfair, deceptive, untrue
23  or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

24      Here, plaintiff claims that defendant violated the CLRA
25  and UCL by fraudulently omitting the alleged defect when dealing
26  with class members.  (Pl.'s Renewed Mot. at 14.)

27      Under California law, a fraudulent omission claim
28  requires proving that the defendant had a duty to disclose the

15

1   omitted information.[6]  Goodman v. Kennedy, 18 Cal. 3d 335, 346

2   (1976).  Such a duty exists when defendant has "sole knowledge or

3   access to material facts and knows that such facts are not known

4   to or reasonably discoverable by the other party."[7]  Id. at 347.

5   Plaintiff must also show that she relied on the fraudulent

6   omission.  See Daniel, 806 F.3d at 1225.

7        Plaintiff has shown that this court may resolve whether

8   defendant had a duty to disclose the alleged defect on a class-

9   wide basis.  The court can determine what defendant knew about

10  the alleged defect, when it knew what, and at what point that

11  knowledge was no longer exclusive once for all class members.

12  See Wolin, 617 F.3d at 1171 (holding that "[c]ommon issues

13

14        [6]  Such a claim also requires showing that defendant
    breached a duty to disclose.  Plaintiff states that some Ford
15  dealers disclosed the alleged defect to class members after they
    purchased class vehicles, (see Pl.'s Renewed Mot. at 7.), raising
16  the possibility that some dealers disclosed the alleged defect
    prior to purchase (e.g., to persuade a customer to purchase a
17  different Ford car).  That possibility, however, does not defeat
    class certification.  The same possibility was present in Wolin,
18  for example, where the Ninth Circuit certified class for
    plaintiffs' failure to disclose claims despite the fact that
19  class members purchased their vehicles from dealers across
    multiple states who, presumably, may also have disclosed an
20  alleged defect to some class members.  See Wolin, 617 F.3d at
    1171.
21

22        [7]  A duty to disclose also exists when one party actively
    conceals material facts from another.  See Goodman, 18 Cal. 3d at
23  347 (citing Herzog v. Capital Co., 27 Cal. 2d 349, 353 (1945)).
    Because the parties focus their dispute on whether a duty existed
24  under the 'sole knowledge' doctrine, the court will address that
    issue instead.  It notes, however, that defendant also likely had
25  a duty to disclose under the 'active concealment' doctrine, as
    plaintiff has provided evidence that defendant concealed the
26  alleged defect.  (See Pl.'s Renewed Mot. at 5 (citing exhibits
    indicating Ford technicians denied existence of premature tire
27  wear issue to dealers despite numerous customer complaints).)

28

1    predominate such as whether Land Rover was aware of the existence

2    of the alleged defect, whether [it] had a duty to disclose its

3    knowledge and whether it violated consumer protection laws when

4    it failed to do so").  As to the element of materiality, the

5    Ninth Circuit has held in this case that "[m]ateriality is judged

6    from the perspective of a 'reasonable consumer,'" Daniel, 806

7    F.3d at 1226 (quoting Ehrlich v. BMW of N. Am., LLC, 801 F. Supp.

8    2d 908, 916 (C.D. Cal. 2010)), signifying that it is an objective

9    inquiry, see Edwards, 603 F. App'x at 541 ("[M]ateriality is

10   governed by an objective 'reasonable person' standard under

11   California law, an inquiry that is the same for every class

12   member . . . .").

13         With respect to whether class members relied on the

14   alleged fraudulent omission, the Ninth Circuit has similarly held

15   that an objective inquiry is proper.  "To prove reliance on an

16   omission, a plaintiff . . . [may] simply prov[e] 'that, had the

17   omitted information been disclosed, one would have been aware of

18   it and behaved differently.'" Daniel, 806 F.3d at 1225 (quoting

19   Mirkin v. Wasserman, 5 Cal.4th 1082, 1093 (1993)).  "That one

20   would have behaved differently can be presumed, or at least

21   inferred, when the omission is material." Id.  As discussed

22   above, materiality is an objective inquiry under California law.

23   With respect to whether one would have been aware of the omitted

24   information, the Ninth Circuit has held in this case that

25   interacting with an authorized Ford dealer prior to purchase is

26   sufficient to show that one would have been aware of a

27   disclosure.  Id. at 1226.  Because plaintiff's class includes

28   only purchasers of new Focuses who, presumably, interacted with

1    authorized Ford dealers prior to purchase, that inquiry, too, is

2    amenable to class-wide resolution.

3           Defendant raises the same issues concerning existence

4    of defect, damages, purchase for "consumer" use, and statute of

5    limitations that it raised with respect to plaintiff's other

6    claims. (See Def.'s Opp'n at 45-50.)  As stated above, such

7    issues do not defeat class certification under the relevant

8    authorities.

9           In light of the Ninth Circuit's opinions in this and

10   other cases, plaintiff has shown that common questions

11   predominate in her CLRA and UCL claims.

12          C.   Superiority

13          Rule 23(b)(3) also requires "that a class action is

14   superior to other available methods for fairly and efficiently

15   adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  It

16   sets forth four non-exhaustive factors in determining

17   'superiority': (A) class members' interests in individually

18   controlling the litigation; (B) the extent and nature of any

19   litigation concerning the controversy already begun by class

20   members; (C) the desirability of concentrating the litigation in

21   the particular forum; and (D) likely difficulties in managing a

22   class action.  Id.

23          Here, class members' interest in individually

24   controlling the litigation is low given that many members likely

25   stand to recover relatively little compared to the costs of

26   individual litigation.  (See, e.g., Pl.'s Mot. at 26 ("Plaintiff

27   was compelled to spend an amount measured in the hundreds of

28   dollars to replace tires worn out prematurely by the suspension

                                    18

1   defect.").)   The court is aware of neither any concurrent

2   litigation in this case, nor a reason why this particular forum

3   would be ill-suited to resolving plaintiff's class action.

4   Managing this class action would not present undue difficulties

5   in light of the greater burden and inefficiency of trying the

6   cases individually.   See Wolin, 617 F.3d at 1176 ("Forcing

7   individual vehicle owners to litigate their cases, particularly

8   where common issues predominate for the proposed class, is an

9   inferior method of adjudication.").   Accordingly, plaintiff has

10  met 'superiority.'

11      D.   Typicality

12      'Typicality' requires that plaintiff have claims

13  "reasonably coextensive" with those of proposed class members.

14  Hanlon, 150 F.3d at 1020.   The test for 'typicality' is "whether

15  other members have the same or similar injury, whether the action

16  is based on conduct which is not unique to the named plaintiffs,

17  and whether other class members have been injured by the same

18  course of conduct."   Hanon v. Dataproducts Corp., 976 F.2d 497,

19  508 (9th Cir. 1992) (citation omitted).

20      Here, plaintiff alleges that defendant sold her and the

21  proposed class defective vehicles.   (See Pl.'s Mot. at 14.)   Even

22  if plaintiff and members of the class did not suffer same damages

23  from the alleged defect, they, according to plaintiff, suffered

24  the same injuries (i.e., breach of warranties and violation of

25  consumer protection laws) from the same inaction (i.e.,

26  defendant's failure to repair and disclosed the alleged defect)

27  and seek to recover pursuant to the same legal theories and

28  warranties.   (Id. 15-17.)   This satisfies 'typicality.'   See

19

1   Hanon, 976 F.2d at 508; see also Wolin, 617 F.3d at 1175 (where

2   plaintiffs "allege that they, like all prospective class members,

3   were injured by a defective alignment geometry in the vehicles .

4   . . [and] seek to recover pursuant to the same legal theories,"

5   they have satisfied 'typicality').

6        E.   Adequacy

7            Rule 23(a) requires that the class representative "will

8   fairly and adequately protect the interests of the class."  Fed.

9   R. Civ. P. 23.  This inquiry involves two questions: "(1) do the

10  named plaintiffs and their counsel have any conflicts of interest

11  with other class members and (2) will the named plaintiffs and

12  their counsel prosecute the action vigorously on behalf of the

13  class?"  Hanlon, 150 F.3d at 1020.

14           Defendant argues that plaintiff is inadequate because

15  she will be representing class members who may have suffered

16  personal injuries from the alleged defect, yet is not seeking

17  personal injury damages herself.  (Def.'s Opp'n at 53.)

18  Defendant contends that this "claim-splitting decision creates a

19  conflict between Plaintiff's interests and those of the putative

20  class."  (Id. (quoting Sanchez v. Wal Mart Stores, Inc., Civ. No.

21  2:06-02573, 2009 WL 1514435, at *9 (E.D. Cal. May 28, 2009)

22  (Mendez, J.)).)  Again, however, as the Ninth Circuit has told

23  us, differences in damages do not defeat class certification.

24  See Wolin, 617 F.3d at 1173; Edwards, 603 F. App'x at 541;

25  Yokoyama, 594 F.3d at 1089; Pulaski, 802 F.3d at 988.

26           Plaintiff's counsel are experienced attorneys who have

27  prosecuted more than two hundred class actions.  (Pl.'s Mot. at

28  20.)  They have committed significant resources to investigating

1   plaintiff's claims, conducting discovery, litigating this case on

2   summary judgment motions, and successfully appealing to the Ninth

3   Circuit.  (Id.)  The court finds no reason to doubt that

4   plaintiff's counsel are qualified to conduct this litigation and

5   will vigorously prosecute the action on behalf of class members.

6   See Hanlon, 150 F.3d at 1021 ("Although there are no fixed

7   standards by which 'vigor' can be assayed, considerations include

8   competency of counsel.").

9          Accordingly, the court finds that plaintiff and

10  plaintiff's counsel are adequate representatives of the class.

11  III. Conclusion

12         IT IS THEREFORE ORDERED that plaintiff's motion to

13  certify a class of individuals who--(1) purchased or leased any

14  2005 through 2011 Ford Focus vehicle in California, (2) currently

15  own such a vehicle, and (3) currently reside in the United

16  States--for her claims against defendant be, and the same hereby

17  is, GRANTED.

18  Dated:  September 23, 2016

19

20  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

21